CHARLES F. HOUGHTON *vs.* LUTHER MENDENHALL *et al.*

Argued May 5, 1892. Decided May 23, 1892.

Ejectment—When it Cannot be Maintained.

A. and B. being the owners of contiguous lots, A. erected a building on his lot, which by reason of a mistake as to the boundary encroached upon the lot of B. B. being about to build on his lot, and the parties both supposing that the wall of A.'s building was wholly on his own lot, while in fact it was wholly on the lot of B., they entered into a contract, by the terms of which that wall was to be permanently used and maintained as a party wall. A. also conveyed to B. a strip one foot in width from his lot, contiguous to the lot of B., upon which strip the wall was supposed in part to stand. There being no mistake in the party-wall agreement, but only in respect to the true boundary, which was only an *inducement* to the making of the contract, *held*, that the party-wall agreement was not void; that it could not be treated by B. as a nullity; and that, so long as it stands uncanceled, neither B. nor his assigns (the contract having been recorded) can eject A. or his assigns from the premises covered by the party-wall.

Appeal by plaintiff, Charles F. Houghton, from a judgment of the District Court of St. Louis county, *Start*, J., entered March 10, 1891.

The defendants, Luther Mendenhall and Charles A. Duncan, were on July 26, 1890, in possession of lot thirty-one (31) and the adjoining westerly two and one-fifth feet in width of lot twenty-nine (29) in Duluth Proper, fronting on West Superior street. On that day plaintiff commenced this action of ejectment against them to recover possession of this strip of land in lot twenty-nine. The defendants answered, claiming they were entitled to the possession of this strip of land under and by virtue of the party wall contract mentioned in the opinion. The issues were tried before the Court without a jury, and findings were filed February 18, 1891, directing judgment that the action be dismissed upon the merits. Judgment was entered accordingly, and on August 18, 1891, plaintiff appealed to this Court.

*S. T. Harrison* and *Wm. W. Billson*, for appellant.

At the time of making the party wall agreement, Williamson was the absolute owner of the entire wall, but they supposed it to belong

to Banning. The object and purport of the instrument was to confer upon Williamson, property rights which he already possessed. By the terms of the contract, Banning undertook nothing whatever but agreed to permit Williamson to exercise certain rights upon his, Williamson's, own property. The case presented is the simple one of an individual contracting for the purchase of his own property which, by mistake of fact, he supposes belongs to another. Such agreement is naught, both at law and in equity, without reference to the belief or motive which determined it. Pollock, Cont. 427; 1 Wharton, Cont. § 181; *Couturier* v. *Hastie,* 5 H. L. Cas. 673; *Bingham* v. *Bingham,* 1 Ves. Sr. 126; *Strickland* v. *Turner,* 7 Exch. 208.

Plaintiff is not estopped to claim his own by anything done or omitted by Williamson, his grantor. He acted in the best of faith, and upon the most trustworthy evidence of the true boundary line then available to him. *Pence* v. *Arbuckle,* 22 Minn. 417; *Sutton* v. *Wood,* 27 Minn. 362; *Whitaker* v. *Williams,* 20 Conn. 104; *Welland Canal Co.* v. *Hathaway,* 8 Wend. 480; *Biddle Boggs* v. *Merced Mining Co.,* 14 Cal. 368; *Copeland* v. *Copeland,* 28 Me. 539; *Davenport* v. *Turpin,* 43 Cal. 602; *Stockman* v. *Riverside L. & I. Co.,* 64 Cal. 57.

There can be no estoppel where the facts are equally known or equally unknown to both parties, and where both have the same means of ascertaining the truth. *Brandt* v. *Virginia Coal & Iron Co.,* 93 U. S. 326; *Plummer* v. *Mold,* 22 Minn. 15; *Combs* v. *Cooper,* 5 Minn. 254, (Gil. 200;) *Proctor* v. *Putnam Machine Co.,* 137 Mass. 159; *Thayer* v. *Bacon,* 3 Allen, 163; *Brewer* v. *Boston & W. R. Corp.,* 5 Met. 478; Bigelow, Estoppel, 593–596; *Bradbury* v. *Cony,* 59 Me. 494; *Kincaid* v. *Dormey,* 51 Mo. 552; *Acton* v. *Dooley,* 74 Mo. 63.

*Walter Ayers,* for respondent.

Something more than a mere sale of property is evidenced by this party wall agreement. The agreement is one to constitute a particular wall a party wall, in the position which it then occupied, with various rights, privileges, and covenants, which might be beneficial to both parties. It contains an obligation to extend the wall, and to

pay for the use of such extension when it should be used by Banning, and an obligation to rebuild the wall in the same position which it then occupied. In short, by this contract the easterly wall of the Banning Block where it then stood was agreed upon by the respective parties as the party wall between their lots, and each had the equal right to possess, use, and enjoy the wall as a party wall in common with the other, so long as the buildings upon the lots should stand. The fact that the parties may have acted under some misapprehension as to the exact position of the wall cannot of itself avoid the legal effect of the agreement. An agreement into which some element of mistake may enter will not be absolutely void, as contradistinguished from voidable, at the election of one of the parties. It was at most merely voidable. The distinction is apparent between the case at bar and cases where parties contract for a thing which has no actual existence, under the mutual but mistaken belief that it exists; or when a person simply and solely buys property already belonging to him.

Courts are disposed to apply the principles of estoppel to questions of boundary, where the boundaries are not exactly defined, or are with difficulty ascertained, or where the title deeds leave the true location doubtful and uncertain. *Majors* v. *Rice,* 57 Mo. 384; *McNamara* v. *Seaton,* 82 Ill. 498; *Rogers* v. *Sinsheimer,* 50 N. Y. 646.

DICKINSON, J. The property involved in this controversy consists of two contiguous lots in Duluth, (first division,) numbered, respectively, twenty-nine (29) and thirty-one (31.) Lot twenty-nine (29) lies east of lot thirty-one (31.) The plaintiff owns the former; the defendants, the latter. In 1872 one Banning, who then owned lot thirty-one (31) erected thereon a substantial two-story stone building, known as the "Banning Block." By reason of a mistake as to the true boundary between the lots the easterly wall of this building was constructed wholly on lot twenty-nine, (29,) the building thus covering two and one-fifth feet of the latter lot. In 1884 one Williamson owned that lot twenty-nine, (29,) which had theretofore been unoccupied, except in so far as the Banning block encroached upon it. In that year, Banning and Williamson, both erroneously

supposing that the Banning block stood wholly on lot thirty-one, (31,) and that the boundary line between the lots was coincident with the easterly face of the wall of that building, entered into a formal agreement under seal, which was then recorded, and which is fully set forth in the record of this case. This instrument referred to the Banning block as standing on lot thirty-one, (31,) and recited the fact that Williamson was about to erect a building on his lot, twenty-nine, (29,) and that Banning had conveyed to him the easterly one foot of lot thirty-one, (31,) (which conveyance was in fact made after the execution of this agreement, and in reliance upon the same.) The instrument embodies carefully framed and particular agreements of the parties, relating to the existing easterly wall of the Banning block as a party wall. Banning thereby, for a pecuniary consideration named, in terms granted to Williamson, his heirs and assigns, the right to use the wall, as well as all extensions thereof that might be made, as a party wall. Williamson agreed to make further extensions of the same wall, and to grant to Banning, his heirs and assigns, the right to use as a party wall the extended or new wall so to be erected, upon the payment of one-half the value of such new wall. It was covenanted that if it should become necessary thereafter to repair or rebuild any part of the existing wall, or of the contemplated extension of the same, after Banning should have availed himself of the right to use that as a party wall, the expense should be borne by the parties equally. It was provided that this agreement should be perpetual, and be construed as a covenant running with the land on which the wall was situate, but that no part of the fee of the soil should by this agreement pass from either of the respective owners.

Thereupon Williamson erected a two-story stone building on his lot, as contemplated, using the easterly wall of the Banning block as the westerly wall of his structure. That wall has ever since stood and been used as a party wall, without objection, until this plaintiff acquired his title. In all these transactions the parties acted upon the erroneous assumption as to the true boundary to which we have referred.

Through mesne conveyances from Williamson, lot twenty-nine (29) was in 1889 conveyed to the plaintiff, (appellant;) the grantees in all such conveyances having notice of the party-wall agreement, and the earlier of such conveyances being in terms made subject to the rights conveyed by the party-wall agreement. In 1887, Banning conveyed his lot thirty-one (31) to the defendants; they purchasing in reliance upon the party-wall agreement, and without notice of the mistake of fact as to the boundary, and believing that the party wall was wholly on that lot.

By this action the plaintiff seeks to eject the defendant from that part of lot twenty-nine (29) on which the party wall stands. This is an appeal by the plaintiff from a judgment in favor of the defendants, after a trial by the court. The court considered that the mistake of fact upon which the parties acted in making the party-wall agreement did not render their contract wholly void, but at most only voidable, and that, so long as it stands unreformed and unrescinded, it must be given effect, and hence that the defendants should not be ejected. We concur in this view of the case.

Whether a court of equity, in a proper action, would now, under the circumstances, set aside the contract because of the mistake, is not to be here decided. Equitable relief is not sought in this action. The plaintiff's right to recover, to eject the defendants from the premises covered by the party wall, rests upon the theory that the agreement was void and is of no legal effect, because of the misapprehension of the facts referred to. It is self-evident that if such be not the case,—if the agreement was not void, but legally effectual, —the plaintiff cannot recover in this merely legal action; for that would be opposed to the very essence of the contract. A misapprehension in the minds of the contracting. parties, even concerning facts which are relevant and material to their agreement, does not necessarily render their agreement void and of no effect. Such, undoubtedly, may be the result where the mistake goes to the very substance of the whole consideration of the contract, so that it can be said that the agreement is wholly unsupported by any consideration, or where, by reason of the mutual mistake of the parties, their agreement is inapplicable to the subject contemplated by them, or is im-

possible of performance, or where the mistake is of such a nature as to exclude any real consent of the parties; their minds not meeting in agreement upon the same matters. But this agreement was not thus fundamentally inoperative, nor were there wanting the essential elements of a valid contract. The expressed agreement of the parties was clear and unconditional, and may be carried into effect according to its terms. Their minds met, and they assented to the particular stipulations embodied in the written instrument executed by them. There was no mistake in the agreement itself, nor in the written expression of it. The agreement was, as must be supposed, just what they both intended it should be. The misapprehension of the parties related to a subject collateral to the party-wall agreement, although it was closely related thereto. The mistake of the parties was as to the location of the boundary line, but that subject did not enter into this party-wall agreement as a matter of contract. The mistake was as to conditions or circumstances which were related to the agreement entered into only as an *inducement* or *motive* influencing their conduct. It is probably true that they would not have entered into the agreement had they known that the wall which they stipulated to mutually use and maintain as a party wall stood wholly on the lot now owned by the plaintiff. Whatever influence that consideration might have in inducing a court of equity to relieve a party from the binding stipulations of the contract, that alone does not render inoperative the agreement, in respect to which none of the essential elements of a legal contract were wanting.

It is said by the appellant that this agreement conferred upon the party from whom his title has come, the owner of lot twenty-nine, (29,) no right or benefit; that the wall to which the contract relates, being really on his land, was a part of his estate, and his rights in respect to it were complete and absolute. But, conceding Williamson's property rights by virtue of his ownership of the soil, there was still a consideration, sufficient to support the contract, in the agreement on the part of Banning, his heirs and assigns, to contribute equally with the other party to the expense of maintaining or rebuilding the wall. It is not material to the question of the existence of a consideration, and of the effectual nature of the obligations ex-

pressed, that, if the true location of the boundary had been known, Williamson might have secured terms more advantageous than those agreed upon, or that it might not have been for his interest to enter into any agreement upon the subject.

We hold that the contract was not void, and that the plaintiff was rightly held not entitled to recover in this action. If we rightly apprehend the facts in respect to the conveyance by Banning to Williamson of the easterly one foot in width of lot thirty-one (31) that affords an additional reason why the agreement cannot be deemed to have been void, and why the plaintiff cannot avoid it by his mere refusal to regard it as binding, even if he could under any circumstances avoid it, except through the aid of a court of equity. While it is not expressly found as a fact, it seems probable that this conveyance was a part of the transaction which included the making of the party-wall agreement, in which it is erroneously recited that the deed had been given. It is found that the deed was executed in reliance upon this agreement. If the giving of the deed was a part of an entire transaction, so that the making of the party-wall agreement should be deemed to have constituted in part the consideration for the conveyance, it would seem clear that Williamson could not have avoided the agreement without reconveying the land. It is said that the deed itself was void because of the mistake which is relied upon as avoiding the contract. But the deed was at least effectual to convey the legal title. This plaintiff stands in no better position than did Williamson, and the defendants have succeeded to the rights of Banning, who conveyed lot thirty-one (31) to them.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 269.)