STATE of Minnesota, Respondent,

v.

Victor MARTINEZ–MENDOZA,
Appellant.

No. A09–2151.

Supreme Court of Minnesota.

Aug. 31, 2011.

Rehearing Denied Oct. 13, 2011.

Lori Swanson, Attorney General, and John Choi, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION.

PAGE, Justice.

On August 24, 2009, appellant Victor Martinez–Mendoza was charged by complaint with one count of first-degree criminal sexual conduct [count one] in violation of Minn.Stat. § 609.342, subds. 1(a) and 2(a) (2010), and one count of second-degree criminal sexual conduct [count two] in violation of Minn.Stat. § 609.343, subds. 1(a) and 2(a) (2010), for the sexual abuse of his girlfriend's daughter, A.K.D. The State and Martinez–Mendoza subsequently reached a plea agreement calling for Martinez–Mendoza to plead guilty to count two of the complaint; receive the presumptive guidelines sentence for that offense, which all parties thought to be an executed term of 90 months in prison; and dismissal of count one of the complaint. At a hearing on September 30, 2009, Martinez–Mendoza pleaded guilty to count two of the complaint pursuant to the agreement. The district court accepted the plea, adjudicated Martinez–Mendoza guilty of count two, and set a sentencing hearing for a later date. Before the sentencing hearing took place, the State learned that the actual presumptive guidelines sentence for the offense set out in count two of the complaint was 36 months with execution stayed. As a result, the State moved to vacate the plea or, in the alternative, reinstate count one of the complaint. The district court denied the motion, citing double jeopardy concerns. On appeal, the court of appeals concluded that it had the authority to hear the State's appeal and reversed based on the parties' mutual mistake. For the reasons discussed below, we reverse the court of appeals.

### I.

This case arises out of the following facts, which are taken from the complaint. According to A.K.D., Martinez–Mendoza, her mother's live-in boyfriend and father to A.K.D.'s step-siblings, sexually touched A.K.D. on at least two occasions, starting when she was six years old with the most recent incident occurring when she was eight years old. A.K.D. reported that on at least one occasion, Martinez–Mendoza touched A.K.D. on her "private part" with his hand and with his "private part," and that he also touched her mouth with his mouth and tongue. A.K.D. also reported

that Martinez–Mendoza told A.K.D.'s siblings to go watch television elsewhere while Martinez–Mendoza and A.K.D. went into A.K.D.'s mother's room. Once in the room, Martinez–Mendoza took off A.K.D.'s shorts and underwear, got on top of her, and touched his "private part" to her "private part." A.K.D. indicated that, while on top of her, Martinez–Mendoza ejaculated, which A.K.D. wiped off with her clothes. During an interview with law enforcement, Martinez–Mendoza admitted to touching A.K.D. on two occasions. He claimed that on the first occasion, he first touched her vagina through her underwear, but then continued to touch her vaginal area. On the second occasion, Martinez–Mendoza admitted to putting A.K.D. on top of him while he had an erection, feeling A.K.D.'s vagina on his penis, and ejaculating. He admitted that he had been a victim of sexual abuse when he was a child and asked for help.

At a hearing on September 30, 2009, the State and Martinez–Mendoza reached a plea agreement calling for Martinez–Mendoza to plead guilty to count two of the complaint and the dismissal of count one at sentencing. The agreement also called for Martinez–Mendoza to receive the presumptive sentence under the Minnesota Sentencing Guidelines, which both the State and Martinez–Mendoza assumed to be an executed term of 90 months in pris-

on. At the hearing, Martinez–Mendoza formally entered a plea of guilty to count two. The district court accepted the plea and adjudicated Martinez–Mendoza guilty of second-degree criminal sexual conduct as alleged in the complaint. The court also scheduled a sentencing hearing for November 10, 2009. Before the sentencing hearing, the State discovered that the presumptive sentence for count two as set forth in the complaint was a 36–month stayed prison sentence, not the assumed 90–month executed sentence.[1] As a result, the State moved to vacate the guilty plea or, in the alternative, to amend the complaint to reinstate count one. The district court then held a hearing on the motion on October 27, 2009.

At the October 27 hearing, the district court asked both lawyers if they had looked up the presumptive sentence before the plea hearing. The prosecutor admitted that he did not look up the presumptive sentence, but instead relied on information provided to him by a colleague in the county attorney's office. The defense counsel indicated that he had looked up the presumptive sentence and made notes on his file indicating the penalties for both a severity level B and severity level D offense. Defense counsel specifically stated:

1. While all of the subdivisions of Minn.Stat. § 609.343 constitute criminal sexual conduct in the second degree, some of the subdivisions are categorized as more serious conduct and carry longer presumptive sentences. As relevant here, subdivision 1(a), the offense alleged in the complaint, criminalizes sexual conduct when "the complainant is under 13 years of age and the actor is more than 36 months older than the complainant." Subdivision 1(a) is a severity level D offense and carries a presumptive 36–month stayed prison sentence. Minn. Sent. Guidelines IV. However, subdivision 1(h) criminalizes sexual conduct when the actor has "a significant relationship

to the complainant, the complainant was under 16 years of age at the time of the sexual contact, and ... (iii) the sexual abuse involved multiple acts committed over an extended period of time." Subdivision 1(h) is classified as a category B offense and carries a presumptive 90–month executed prison sentence. Minn. Sent. Guidelines IV. The facts to which Martinez–Mendoza pled guilty arguably support either offense. At the time Martinez–Mendoza agreed to plead guilty and entered the plea, the State was acting on the incorrect assumption that the second-degree offense alleged in the complaint was a category B offense.

I was questioning at the time that the plea was taken is this a B or is this a D? But I did not have my books with me at that time, and I did not look it up to see if it was a B or a D; but I was aware that criminal sexual conduct in the second degree could be either a B or a D. So there was a question in my mind as to whether this was a 90–month commit or a 36–month stayed sentence; and I thought that we're pleading as it is so whatever it is is what it's going to be. I understood the state was adamant that they thought it was 90, and that's why I wrote 90 on the plea agreement.

The court also indicated that it had not looked up the presumptive sentence.

The district court also inquired as to each party's understanding of the terms of the plea agreement. The State stated that it understood the agreement to be a "plea to criminal sexual conduct in the second degree and that that would accomplish a 90–month commit to the Commissioner," that both the State and defense counsel presented this understanding to the court, and that the State had never discussed a 36–month stayed sentence with defense counsel. Defense counsel stated that:

> It was contemplated that this would be a 90–month commit to the Commissioner of Corrections. .... At the time the plea petition was put in it was assumed, at least by the state and, in part by me, that this would be a severity level B, which calls for a 90–month commit ... [even though] there was a mistake made and this is a 36–month stayed sentence.

Defense counsel further indicated that "[c]ount two as charged is a stayed sentence. Clearly that was a mistake...." The district court indicated that it also understood the plea agreement to carry a 90–month executed sentence.

The State argued that, due to mutual mistake, the State should "be allowed to withdraw from the plea agreement and that this matter then be returned to square one, which is having Mr. [Martinez-]Mendoza charged with the two counts he was originally charged." Defense counsel argued that the plea agreement called for 90 months *or* a guidelines sentence and, with no showing of grounds for departure, the proper sentence for the guilty plea was the presumptive 36–month stayed sentence for a level D offense.[2] Defense counsel further argued that there was no case law allowing the State to withdraw from the plea agreement, that his client did not wish to withdraw from the plea agreement, and that the court should sentence his client pursuant to the plea agreement, which "calls for dismissal of count one, plead guilty to count two." Defense counsel also argued that "[c]ount two as charged is a stayed sentence. Clearly that was a mistake, but my client should be entitled to the benefit of that mistake." The district court took the State's motion under advisement and postponed the sentencing hearing.

On November 24, 2009, the court heard arguments regarding sentencing. The State again argued that the mutual mistake precluded a valid and enforceable plea agreement. In response, defense counsel argued that the plea agreement was valid, that the State should have to bear the consequences of its mistakes, and that the court should sentence Martinez–Mendoza pursuant to the presumptive sentence for the offense charged in count two of the complaint. Defense counsel also argued that, because his client had already

---

**2.** At two points during the hearing, defense counsel offered to compromise with the State and proposed that Martinez–Mendoza be sentenced to a 36–month executed, as opposed to stayed, sentence. The State evidently rejected this offer.

pleaded guilty and the court had accepted the plea, double jeopardy precluded the State from recharging his client with a greater offense.

At the end of the parties' arguments, the district court, on the record, found that a mistake had been made with respect to the presumptive sentence for the offense charged in count two of the complaint; that the parties had created a valid plea agreement that called for the dismissal of count one of the complaint and a "guidelines sentence for a plea of guilty to count two"; and that Martinez–Mendoza had, pursuant to that agreement, pleaded guilty to count two of the complaint. The court further noted for the record that it would not have accepted the plea had it known that the sentencing guidelines called for a 36–month stayed sentence. Before sentence was imposed, the State sought a stay of the sentencing to allow time for an appeal to the court of appeals. After consideration, the district court declined to issue a stay and proceeded to sentence Martinez–Mendoza pursuant to the terms of the agreement to the presumptive guidelines sentence of 36 months with execution stayed for the offense of conviction. Pursuant to the plea agreement, the court also dismissed count one of the complaint.

The State appealed. The court of appeals considered two issues on appeal: first, whether the court of appeals had jurisdiction to hear the appeal; and, second, if there was jurisdiction, whether the plea agreement was valid.[3] Treating the district court's denial of the State's motion to vacate the plea or, in the alternative, to amend the complaint, as the denial of a pretrial order, the court concluded that it had jurisdiction. *State v. Martinez–Mendoza,* No. A09–2151, 2010 WL 1753361, at *5 (Minn.App. May 4, 2010). The court went on to hold that the plea agreement was void under contract law because there was a material mutual mistake regarding the sentence, and therefore reversed the district court. *Id.* at *6–7.

We granted Martinez–Mendoza's petition for review, which asks us to answer two questions. First, we must determine whether the district court properly denied the State's motion to withdraw from the plea agreement, have Martinez–Mendoza's plea vacated, and amend count two of the complaint. Before answering that question, we must determine whether the State has the authority, statutory or otherwise, to appeal the district court's order denying the State's motion. Second, the State asks us to decide whether it may recharge Martinez–Mendoza with count one of the complaint following this appeal. We consider each of these issues in turn.

## II.

■ Martinez–Mendoza argues that, because jeopardy attached at the time the district court accepted his plea and adjudicated him guilty, the State may not appeal the district court's order denying the State's motion to withdraw from the plea agreement, vacate the conviction, and amend the complaint. The State contends that, because the case had not gone to trial and because Martinez–Mendoza had not been sentenced at the time of the denial of its motion, its appeal was from a pretrial order and therefore double jeopardy concerns do not preclude the appeal.

**3.** Before the court of appeals' decision was issued, Martinez–Mendoza was deported to Mexico. This fact, however, does not moot the issue as Martinez–Mendoza could be subject to conviction for a more serious offense if he were to return to the United States. *See*

*United States v. Villamonte–Marquez,* 462 U.S. 579, 581 n. 2, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) (rejecting the contention that deportation renders a case moot when the reversal of the case would reinstate a conviction).

For the State to appeal, there must "be a statute or court rule that permits the appeal, or the issue must 'arise by necessary implication' from an issue where the State's right to appeal is expressly provided." *State v. Rourke*, 773 N.W.2d 913, 923 (Minn.2009) (quoting *In re C.W.S.*, 267 N.W.2d 496, 498 (Minn.1978)). Such statutes are strictly construed because appeals by the State in criminal proceedings are not favored. *Id.* As relevant to this case, Minn. R.Crim. P. 28.04, subd. 1(1), allows the prosecuting attorney to appeal "in any case, from any pretrial order, including probable cause dismissal orders based on questions of law." [4] However, Rule 28.04, subdivision 2(8), prohibits the State from appealing "a pretrial order ... after jeopardy has attached." We review the interpretation of procedural rules de novo. *Rourke*, 773 N.W.2d at 923.

With respect to Rule 28.04, subdivision 2(8), we must determine whether the State's appeal is precluded by jeopardy having attached before the State's appeal. While we have not had occasion to address when jeopardy attaches in the context of a plea agreement, we have said that jeopardy attaches, at the latest, following a conviction. *See Hankerson v. State*, 723 N.W.2d 232, 236–37 (Minn.2006) (discussing that double jeopardy protections prohibit "a second prosecution for the same offense after conviction"); *see also Ohio v.* *Johnson*, 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). In Minnesota, a conviction "requires that a district court both accept and record the guilty plea." *State v. Thompson*, 754 N.W.2d 352, 355 (Minn.2008); *State v. Schmidt*, 612 N.W.2d 871, 876–77 (Minn.2000). In *Thompson*, we declined to determine whether a guilty plea is "recorded by the court" when the court states its acceptance on the record or when the clerk enters the judgment of conviction. 754 N.W.2d at 356 n. 4. However, we noted that a defendant can be convicted prior to sentencing pursuant to Minn. R.Crim. P. 27.01 and that the definition of "conviction" in Minn.Stat. § 609.02, subd. 5 (2010), does not require the clerk to enter the judgment into the file. *Id.* Accordingly, we now conclude that a court "records" a guilty plea upon accepting the guilty plea and adjudicating the defendant guilty on the record.

Here, at the September 30, 2009, hearing at which Martinez–Mendoza and the State agreed to the terms of the plea agreement, Martinez–Mendoza formally pleaded guilty before the district court.[5] Upon Martinez–Mendoza entering the plea, the district court unequivocally accepted Martinez–Mendoza's guilty plea and adjudicated him guilty, stating on the record:

> I will accept your guilty plea and adjudicate your guilt on this criminal sexual conduct in the second degree. I'm satis-

---

4. The State must also "include a 'summary statement ... as to how the trial court's alleged error, unless reversed, will have a critical impact on the outcome of the trial.' " *State v. Lessley*, 779 N.W.2d 825, 831 (Minn.2010) (quoting Minn. R.Crim. P. 28.04, subd. 212). Absent a showing of critical impact there is no right to appeal. Here, the State argues and Martinez–Mendoza does not dispute, that the court's alleged error will have a critical impact on the outcome of the trial. Because we conclude the State's appeal fails on other grounds, we need not address this argument.

5. In his dissent, Justice G. Barry Anderson argues that the prosecutor never consented to the plea agreement. However, the record conclusively shows the prosecutor's consent in that he negotiated the terms of the agreement, proposed the agreement to the court, and consented to its terms on the record. Furthermore, the prosecutor facilitated Martinez–Mendoza's guilty plea by asking him the very questions on the record that established his guilt to count two. Clearly, at the time of Martinez–Mendoza's guilty plea, the prosecutor consented to both the plea agreement and the guilty plea to count two.

fied that you understand the offense and the plea agreement. Today you freely and voluntarily have waived or given up your rights and you have admitted the essential elements of criminal sexual conduct in the second degree.

At that point, because the district court accepted Martinez–Mendoza's guilty plea and adjudicated him guilty, Martinez–Mendoza stood convicted and jeopardy attached.[6] Because Rule 28.04 precludes appeal after jeopardy attaches, the State had no right to appeal under that rule.

■■ Alternatively, the State contends it should be allowed to appeal the district court's denial of the State's motion to withdraw from the plea agreement. The State argues that the mutual mistake in the plea agreement as to the presumptive sentence makes the plea agreement voidable by either party, giving the State the right to withdraw.[7] Accordingly, the State argues that the district court erred in denying the State's motion to withdraw from the plea agreement.[8] We conclude the State does not have the right to appeal. Granting the

6. In her dissent, the Chief Justice contends that we are "putting form over substance by concluding that jeopardy attached when the district court accepted and recorded Martinez–Mendoza's guilty plea." Determining that a conviction occurred by applying clearly established law does not involve putting "form over substance." Rather, our application of established law is the only means by which we can preserve the integrity of judicial proceedings and ensure that the safeguards of double jeopardy are preserved and enforced. To suggest otherwise is to suggest that constitutional safeguards are mere technicalities.

7. The dissents both misstate the terms of the plea agreement when they suggest that Martinez–Mendoza pleaded guilty in exchange for an executed 90–month sentence. Rather, the record is clear that the plea agreement was for Martinez–Mendoza to plead guilty on count two, in exchange for which he would receive the *presumptive guidelines sentence* for count two. The fact that the parties were mistaken as to the length of the presumptive sentence is irrelevant to determining the terms of the agreement.

8. The Chief Justice relies upon *State v. Robledo–Kinney*, 615 N.W.2d 25 (Minn.2000), for the proposition that "the [district] court has the discretion to withdraw its acceptance of the plea agreement" "[i]f the district court learns of something after initially accepting a plea agreement, but prior to sentencing, that causes the court to believe that the interests of justice are not served by the plea agreement." This reliance is misplaced as the issues involved in *Robledo–Kinney* are factually differ-

ent from those in this case. Unlike this case, *Robledo–Kinney* involved a defendant who sought specific performance of a plea agreement that he had reached with the State. 615 N.W.2d at 32. We described the circumstances giving rise to Robledo–Kinney's specific performance claim as follows:

> [N]egotiations began on May 28 and culminated on June 1 with a plea agreement contingent on Kinney not having stabbed or sexually assaulted Christenson. Kinney's attorney assured the state's attorney that Kinney had not stabbed Christenson. Shortly after the agreement was reached, Kinney informed his attorney that he had both sexually assaulted and stabbed Christenson. That same day, without informing the state about what he had learned, Kinney's attorney allowed Kinney to give the police a statement. As part of that statement, Kinney told the police he had sexually assaulted and stabbed Christenson. Based on that information, the state withdrew its offer of the plea agreement.

*Id.* at 28. Significantly, there had been no court involvement and jeopardy had not attached at the time the State withdrew its offer of the plea agreement. Nor did the defendant stand convicted at that time. Also significantly, *Robledo–Kinney* did not involve an appeal by the State after the defendant's conviction. Accordingly, the State's appeal and the question of appellate jurisdiction were not at issue as they are in this case. Here, Martinez–Mendoza did nothing that would void his plea agreement before the court's acceptance and recording of his guilty plea. Consequently, *Robledo–Kinney* offers no guidance on the issues of this case.

State's motion to withdraw from the plea agreement over Martinez–Mendoza's objection after Martinez–Mendoza's conviction would allow Martinez–Mendoza to be twice placed in jeopardy in violation of the Double Jeopardy Clause of the United States Constitution. As noted earlier, jeopardy attached, at the latest, when the trial court accepted and recorded Martinez–Mendoza's guilty plea, at which point he stood convicted. It is well established that the Double Jeopardy Clause protects against a second prosecution for the same offense after conviction. *Ohio v. Johnson*, 467 U.S. at 498, 104 S.Ct. 2536 (quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)). Further, once jeopardy attaches, the State may no longer amend its complaint to charge "a different or additional offense." *State v. Smith*, 313 N.W.2d 429, 430 (Minn.1981).

Thus, any appeal by the State is barred as moot as a matter of law because courts cannot grant effectual relief. *Enright v. Lehmann*, 735 N.W.2d 326, 330 (Minn. 2007). Moreover, we have held, in the context of an acquittal, that when a trial court's action in dismissing a count of a criminal complaint amounts to a judgment of acquittal on the merits, the dismissal, no matter how erroneous, is not subject to appeal because the Double Jeopardy Clause bars retrial. *State v. Large*, 607 N.W.2d 774, 779–80 (Minn.2000). While our holding in *Large* was in the context of an acquittal, we conclude that it would be anomalous to treat a conviction on the merits differently than an acquittal on the merits.[9] Thus, we conclude, as we did in *Large*, that the court of appeals lacked jurisdiction over the State's appeal.[10]

9. The Chief Justice disagrees with our statement that a conviction in this case deserves the same protection as that of an acquittal. However, the exceptions she cites in support of her view are not helpful because they are not factually relevant to this case. More importantly, the guarantee against double jeopardy "has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. *It protects against a second prosecution for the same offense after conviction.* And it protects against multiple punishments for the same offense.' " *United States v. DiFrancesco*, 449 U.S. 117, 129, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (emphasis added) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). These protections are independent of each other and each of them is sufficient to bar retrial. The Supreme Court has also made clear that "the bar to retrial following acquittal *or conviction* ensures that the State does not make repeated attempts to convict an individual." *Ohio v. Johnson*, 467 U.S. at 498–99, 104 S.Ct. 2536 (emphasis added). Thus, the fact that an acquittal may be accorded more weight for policy reasons in factual situations unrelated to this case does not

change the Double Jeopardy Clause's prohibition of a second prosecution for the same offense after conviction.

10. Additionally, we note that, as a basic premise, the posture of this case alone precluded the court of appeals from exercising jurisdiction over this appeal. Even if we could ignore, which we cannot, the fact that Martinez–Mendoza stood convicted when the district court accepted and recorded his guilty plea before the State perfected its appeal to the court of appeals, Martinez–Mendoza had been sentenced by the time the court of appeals heard the case. Accordingly, regardless of any other legal issues, the State is prohibited from challenging the merits of the conviction after Martinez–Mendoza was sentenced. *See Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (concluding that a final determination based on the merits of a charge precludes retrial on the same offense, even if the legal rulings underlying the final determination were erroneous); *see also* U.S. Const. amend. V; Minn. Const. art. I, § 7; Minn. R.Crim. P. 28.04, subd. 2(8) ("No appeal of a pretrial order by the prosecutor can be taken after jeopardy has attached.").

## III.

The State also argues that, because only the State has the right to dismiss charges, the district court had no authority to dismiss the first-degree criminal sexual conduct charge alleged in count one of the complaint against Martinez–Mendoza. Thus, the State seeks to be allowed to recharge Martinez–Mendoza with count one, even though he has been convicted of an offense based on the same conduct.

Because the State has not yet attempted to recharge Martinez–Mendoza, we conclude that addressing the issue would be premature. *See State v. Her*, 781 N.W.2d 869, 876 (Minn.2010) (quoting *In re McCaskill*, 603 N.W.2d 326, 327 (Minn. 1999)) (noting that appellate courts "decide only actual controversies and avoid advisory opinions"). We therefore decline to issue an advisory opinion on whether the State may recharge Martinez–Mendoza on count one.[11]

For the foregoing reasons, we reverse the court of appeals' decision and reinstate the district court's decision as to the conviction and sentence of Martinez–Mendoza.

Reversed.

GILDEA, Chief Justice (dissenting).

I respectfully dissent. I disagree with the majority's conclusion that this court cannot consider respondent State of Minnesota's appeal in this case. In my view, jeopardy did not attach when the district court accepted appellant Victor Martinez–Mendoza's guilty plea to second-degree criminal sexual conduct because there was a material defect with the plea, based on the parties' and the district court's mutual mistake regarding the presumptive sentence Martinez–Mendoza would receive for the offense to which he pleaded guilty. Because of this material defect with the plea, jeopardy also did not attach from any conviction that may have resulted when the district court recorded this guilty plea. Once the district court learned of this mutual mistake, it had the authority, pursuant to Minn. R.Crim. P. 15.04, to withdraw its acceptance of Martinez–Mendoza's guilty plea.

## I.

As a threshold matter, we must decide whether the State's pretrial appeal of the district court's denial of its motion to withdraw from the plea agreement should be heard. In Minnesota, pretrial appeals by the State are permitted, but with restrictions. *State v. Barrett*, 694 N.W.2d 783, 787 & n. 3 (Minn.2005). Our rule allows the prosecutor to "appeal as of right . . . in any case, from any pretrial order." Minn. R.Crim. P. 28.04, subd. 1(1). The State's right to appeal is limited by Minn. R.Crim. P. 28.04, subd. 2(8), which states that "[n]o appeal of a pretrial order by the prosecutor can be taken after jeopardy has attached."

At the plea hearing on September 30, 2009, the district court accepted Martinez–Mendoza's guilty plea to count II, which charged him with second-degree criminal sexual conduct, on the terms of the parties' plea agreement. The plea agreement called for Martinez–Mendoza to receive a sentence of "middle of the box or 90 months commit to prison" on count II, and for count I, which charged Martinez–Mendoza with first-degree criminal sexual conduct, to be dismissed at sentencing. The assumptions underlying the plea agree-

---

**11.** While we decline to issue an advisory opinion on whether the State may recharge Martinez–Mendoza with count one of the complaint, we note that if the State chooses to recharge him, issues concerning the statutory bars found in Minn.Stat. §§ 609.035 and 609.04 (2010), as well as double jeopardy, may arise.

ment were that: count II had a severity level of Level B under the Sentencing Guidelines; a 90–month sentence was the applicable presumptive fixed sentence for count II; and that a 90–month sentence for count II was a legal sentence the district court could impose on Martinez–Mendoza. *See* Minn. Sent. Guidelines II.D. and cmt. II.D.01 (stating that presumptive sentence must be imposed unless aggravating or mitigating factors are present).

After Martinez–Mendoza pleaded guilty, the prosecutor learned that the severity level for count II was actually Level D and that the applicable presumptive sentence was a 36–month, stayed sentence, and not 90 months, executed. The State then made a motion to withdraw from the plea agreement or, in the alternative, to allow the State to continue to prosecute Martinez–Mendoza for first-degree criminal sexual conduct. At a hearing on November 24, 2009, the State expressly asked the district court not to sentence Martinez–Mendoza and to stay the proceedings if the court denied the State's motion to withdraw from the plea agreement so that the State could pursue a pretrial appeal. The State made its oral request for a stay prior to the district court dismissing count I and prior to the district court sentencing Martinez–Mendoza on count II.

The district court refused to grant this stay. Instead, it denied the State's motion to withdraw from the plea agreement, dismissed count I, and sentenced Martinez–Mendoza to a 36–month, stayed sentence at the November 24 hearing. The district court indicated that the State's ability to appeal its ruling on the State's motion to withdraw from the plea agreement would not be affected by the imposition of sentence.

The district court did not have the authority to deny the State's request for a stay. Instead, "[u]pon oral notice that the prosecutor intends to appeal a pretrial order, the district court *must* stay the proceedings for 5 days to allow time to perfect the appeal." Minn. R.Crim. P. 28.04, subd. 2(1) (emphasis added). We used the mandatory language of "must" in our rule. *See* Minn.Stat. § 645.44, subd. 15a (2010). The court therefore was required, under our rule, to grant the State's motion for a stay.

I would hold that the district court's failure to comply with the mandatory-stay provision of Rule 28.04 does not deprive the State of its right to file a pretrial appeal, especially when the State complied with its obligations under the rule and requested the stay. And the issue on appeal should be whether jeopardy had attached when the district court denied the State's motion to withdraw from the plea agreement. At that point in time, the district court had accepted Martinez–Mendoza's guilty plea to count II, but the district court had not sentenced Martinez–Mendoza, nor had it dismissed count I. The question, then, is whether jeopardy attached when the district court accepted Martinez–Mendoza's guilty plea to second-degree criminal sexual conduct but prior to sentencing him on that offense and prior to dismissing the remaining charges against him. I turn to that question next.

## II.

Neither the Supreme Court nor our court has expressly decided when jeopardy attaches in a criminal proceeding when there is no trial and the defendant pleads guilty. *See Ricketts v. Adamson*, 483 U.S. 1, 8, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (stating that the Court "may assume that jeopardy attached at least when respondent was sentenced ... on his plea of guilty"). But the Supreme Court has spoken on what factors should be considered

in determining whether jeopardy has attached.

In *Crist v. Bretz*, the Supreme Court held that the federal rule that jeopardy attaches in a jury trial when the jury is empaneled and sworn is an integral part of the Fifth Amendment guarantee against double jeopardy and is applicable to the states. 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The Court explained that "[t]he basic reason for holding that a defendant is put in jeopardy" before a verdict is rendered, *id.* at 35, 98 S.Ct. 2156, is to protect against certain concerns, namely "the finality of judgments, the minimization of harassing exposure to the harrowing experience of a criminal trial, and the valued right to continue with the chosen jury," *id.* at 38, 98 S.Ct. 2156. Protection against these concerns is based on the

> underlying idea ... that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 35, 98 S.Ct. 2156 (quoting *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). The Court concluded that "[t]hose concerns ... have combined to produce the federal law that in a jury trial jeopardy attaches when the jury is empaneled and sworn." *Id.* at 38, 98 S.Ct. 2156.

The Supreme Court has also indicated that when a defendant pleads guilty, the Double Jeopardy Clause's concerns regarding finality and government overreaching are not always at issue. In *Ohio v. Johnson*, the Supreme Court ruled that if the defendant pleaded guilty only to the lesser-included offenses he was charged

with, over the State's objection, it did not violate double jeopardy to allow the State to continue its prosecution of the greater offenses. 467 U.S. 493, 501–02, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). The Court concluded that "[n]o interest of [the defendant] protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment." *Id.* at 501, 104 S.Ct. 2536. In such a circumstance, "[t]here simply has been none of the governmental overreaching that double jeopardy is supposed to prevent." *Id.* at 502, 104 S.Ct. 2536. Moreover, the defendant had "not been exposed to conviction on the charges to which he pleaded not guilty," and the "acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending ... has none of the implications of an 'implied acquittal' which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses." *Id.*

Several courts have concluded that jeopardy does not automatically attach when a district court accepts a guilty plea but before the court sentences the defendant. *United States v. Santiago Soto*, 825 F.2d 616, 618 (1st Cir.1987) (noting that when there is no trial, the First Circuit had held that jeopardy attaches upon acceptance of a guilty plea but "not irrevocably nor automatically"); *State v. Angel*, 132 N.M. 501, 51 P.3d 1155, 1157 (2002) ("We do not believe jeopardy attached to Defendant's plea prior to being sentenced on the misdemeanor charges."); *State v. Duval*, 156 Vt. 122, 589 A.2d 321, 324 (1991) ("The attachment of jeopardy upon the court's acceptance of a guilty plea is neither automatic nor irrevocable.").

The First Circuit held that jeopardy did not attach when a district court accepted a guilty plea but then sua sponte vacated the

plea prior to sentencing because of concerns about the factual basis for the plea. *Santiago Soto*, 825 F.2d at 620 (holding that the Double Jeopardy Clause did not prohibit the State from prosecuting the defendant for felony theft of mail after he was charged with misdemeanor theft of mail, pleaded guilty to that offense, and the district court vacated his plea and dismissed the misdemeanor charges before sentencing). Similarly, the Third Circuit held that the Double Jeopardy Clause did not bar the district court, which had accepted the defendant's guilty plea to manslaughter, from sua sponte striking his guilty plea at a later hearing out of concerns about the factual basis for the plea and then ordering the defendant to stand trial for murder. *Gilmore v. Zimmerman*, 793 F.2d 564, 569–70 (3d Cir.1986).

Several courts have also held that jeopardy does not attach when a district court accepts a guilty plea based upon inaccurate information and the district court then vacates the guilty plea or withdraws its acceptance of the guilty plea after learning of the inaccurate information. The New Mexico Supreme Court held that jeopardy did not attach when the defendant's no-contest plea to misdemeanor DWI was accepted but then dismissed prior to sentencing after the magistrate judge learned that the offense should have been charged as felony DWI because of the defendant's prior record. *Angel*, 51 P.3d at 1157. The Vermont Supreme Court ruled that jeopardy did not attach when a district court accepted a guilty plea to DWI based on an agreed-to sentence that would not involve any jail time when the defendant had misinformed the court about his prior convictions. *Duval*, 589 A.2d at 324–25. Finally, the Tennessee Court of Criminal Appeals ruled that jeopardy did not attach when a district court accepted a guilty plea based upon a misun-

derstanding of the terms of a plea agreement and the district court later withdrew its acceptance of the guilty plea when it learned of this misunderstanding. *State v. Burris*, 40 S.W.3d 520, 526–27 (Tenn.Crim. App.2000).

These courts concluded that jeopardy had not attached when the district court accepted the defendants' guilty pleas because the facts of those cases demonstrated that the concerns the Double Jeopardy Clause was intended to protect against were not implicated. They explained that when the defendant pleaded guilty prior to being sentenced, concerns about finality were not at issue. *Santiago Soto*, 825 F.2d at 619–20; *Angel*, 51 P.3d at 1159; *Burris*, 40 S.W.3d at 525. They further concluded that when the district court either sua sponte vacates a guilty plea or withdraws its acceptance of the guilty plea after learning of an inherent problem with the plea, concerns about government overreaching and subjecting a defendant to multiple trials are not at issue. *Gilmore*, 793 F.2d at 569–70; *Angel*, 51 P.3d at 1159; *Burris*, 40 S.W.3d at 525. The reasoning of these cases is consistent with the Supreme Court's decisions in *Crist* and *Johnson*, and I would adopt it.

These cases also support the conclusion that "jeopardy will not attach upon acceptance of a guilty plea if the plea itself suffers from a material defect." 6 Wayne R. LaFave et al., *Criminal Procedure* § 25.1(d) (3d ed.2007). When a guilty plea suffers from a material defect and the district court then takes action to remedy that defect, by sua sponte vacating the defendant's guilty plea or withdrawing its acceptance of the guilty plea, jeopardy does not attach to the acceptance of the guilty plea because the concerns the Double Jeopardy Clause protects against are not threatened.[1]

Applying that reasoning and analysis to the facts of this case, I conclude that jeopardy did not attach when the district court accepted Martinez–Mendoza's guilty plea because there was a material defect with respect to the guilty plea. The material defect with respect to Martinez–Mendoza's guilty plea was the underlying, flawed presumption that Martinez–Mendoza could receive a 90–month sentence by pleading guilty to count II. Both parties relied on this mutual mistake about the resulting sentence when they entered into the plea agreement, and the district court's consideration and acceptance of Martinez–Mendoza's guilty plea to only count II was based on this inaccurate belief as well. *See State v. Robledo–Kinney*, 615 N.W.2d 25, 32 (Minn.2000) (holding that the State could withdraw from plea agreement that was entered into based on mutual mistake about the defendant's participation in the underlying crime after the State learned of this mistake).

In this situation, the concerns the Double Jeopardy Clause protects against—the finality of judgments, the minimization of harassing exposure to the harrowing experience of a criminal trial, and the valued right to continue with the chosen jury—are not at issue. The constitutional policy of finality is not threatened by a district court's acceptance of a guilty plea to only a lesser charge because there is not the same expectation of finality that comes with a jury's verdict, and no criminal judgment has been entered on the charge to which Martinez–Mendoza pleaded not guilty. *See Johnson*, 467 U.S. at 502, 104 S.Ct. 2536 (explaining that defendant was not subject to conviction on charges to which he did not plead guilty and that there was not an implied acquittal on greater charges when defendant pled guilty to lesser charges). There also was no government overreaching because Martinez–Mendoza did not experience the expense, strain, and embarrassment of a trial. In fact, Martinez–Mendoza has not been subject to one trial, let alone multiple trials. *See Crist*, 437 U.S. at 38, 98 S.Ct. 2156. And since no trial has occurred, the valued right to continue with a chosen jury is not threatened. *Id.* Consequently, I conclude that jeopardy did not attach when the district court accepted Martinez–Mendoza's guilty plea to second-degree criminal sexual conduct.[2]

---

1. The majority does not address whether jeopardy attaches when a district court accepts a guilty plea. Instead, it concludes that jeopardy attached when the district court accepted and recorded Martinez–Mendoza's guilty plea because this resulted in a conviction under Minnesota law. Minnesota law does define a conviction as the acceptance and recording of a guilty plea by the district court. Minn.Stat. § 609.02, subd. 5 (2010). But "[t]he exaltation of form over substance is to be avoided.... [I]n the double jeopardy context it is the substance of the action that is controlling, and not the label given that action." *United States v. DiFrancesco*, 449 U.S. 117, 142, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). The majority is putting form over substance by concluding that jeopardy attached when the district court accepted and recorded Martinez–Mendoza's guilty plea. Because there was a ma-

terial defect with Martinez–Mendoza's plea, jeopardy did not attach even if the district court technically accepted and recorded its flawed acceptance of Martinez–Mendoza's guilty plea.

2. The majority concludes that granting the State's motion to withdraw from the plea agreement "would allow Martinez–Mendoza to be twice placed in jeopardy in violation of the Double Jeopardy Clause." Relying on *State v. Large*, 607 N.W.2d 774, 779–80 (Minn.2000), the majority explains that when a district court's dismissal of a criminal complaint amounts to a judgment of acquittal on the merits, the State cannot appeal the dismissal because the Double Jeopardy Clause would bar retrial of the defendant. The majority concludes that "it would be anomalous to treat a conviction on the merits differently

### III.

Because I believe the court can consider the State's appeal, the final question that must be addressed is whether the district court had the authority to grant the State's motion to withdraw from the plea agreement. I would hold that the court had the authority to and should have withdrawn its acceptance of Martinez–Mendoza's guilty plea.

We have recognized that "there is no constitutional right to specific performance of a plea agreement." *State v. Garcia*, 582 N.W.2d 879, 882 (Minn.1998). Moreover, "[n]either the constitution nor our Rules of Criminal Procedure give to a criminal defendant an absolute right to have his plea of guilty accepted." *State v. Goulette*, 258 N.W.2d 758, 762 (Minn.1977). And a defendant does not have the right to plead guilty to less than all of the charges brought against him. *State v. Linehan*, 276 Minn. 349, 353, 150 N.W.2d 203, 207 (1967); Minn. R.Crim. P. 15.07.

A district court "must reject or accept the plea of guilty on the terms of the plea agreement." Minn. R.Crim. P. 15.04, subd. 3(1). The district court has broad discretion whether to accept a plea agreement. The court "may accept a plea agreement of the parties when the interest of justice would be served." *Id.*, subd.

3(2). The authority given the district court to determine whether a plea agreement promotes the interests of justice continues even after the district court has told the parties that it has accepted the plea agreement. If the district court learns of something after initially accepting a plea agreement, but prior to sentencing, that causes the court to believe that the interests of justice are not served by the plea agreement, the court has the discretion to withdraw its acceptance of the plea agreement. *Cf. Robledo–Kinney*, 615 N.W.2d at 32 (holding that State could withdraw from plea agreement that was entered into based on mutual mistake about the defendant's participation in the underlying crime after the State learned of this mistake).

The record in this case compels the conclusion that the district court's continued acceptance of Martinez–Mendoza's guilty plea was not in the interests of justice. Neither party nor the district court verified what severity level count II had under the guidelines. The parties affirmatively represented to the court that the presumptive sentence for count II was 90 months in prison. The parties' plea agreement was based on the mistaken belief that count II was a severity level B offense, when it was actually a severity level D offense, and that a 90–month prison sen-

---

than an acquittal on the merits." While I believe jeopardy has not yet attached in this case, I also believe this conclusion is flawed for three reasons. First, the Double Jeopardy Clause does not bar all appeals by the State after an acquittal. For example, the State can appeal from a judgment of acquittal that the district court enters after the jury returns a guilty verdict. Minn. R.Crim. P. 28.04, subd. 1(5). Second, for purposes of the Double Jeopardy Clause, the effect of a conviction versus an acquittal is different. *See DiFrancesco*, 449 U.S. at 129–30, 101 S.Ct. 426 (stating that under double jeopardy law "[a]n acquittal is accorded special weight" and explaining how a conviction is treated different-

ly than an acquittal under the Double Jeopardy Clause). Third, the Double Jeopardy Clause does not preclude an appellate court from considering the government's appeal when a defendant has been convicted, over the government's objection, of only some of the charges brought against him or her. *See Johnson*, 467 U.S. at 501–02, 104 S.Ct. 2536 (considering appeal brought by the government and ruling that if a defendant pleads guilty to some of the charges against him or her, over the State's objection, it does not violate double jeopardy to allow the State to continue to prosecute the defendant on the remaining charges).

tence was a legal sentence for this offense. The court initially accepted the plea agreement based on this mistaken belief. The court stated it would not have accepted the guilty plea, which provided for the dismissal of a first-degree criminal-sexual-conduct charge and its corresponding presumptive sentence of at least 144 months in prison, if it had known that the presumptive sentence for count II was a 36–month, stayed sentence.

In addition, there does not appear to be any government overreaching in this case. While the State's mistaken belief about the severity level of the offense it charged Martinez–Mendoza with in count II is inexcusable, the record establishes that the State made a genuine mistake in this case. Several types of second-degree criminal sexual conduct are level B offenses under the guidelines. While the complaint charged Martinez–Mendoza with a type of criminal sexual conduct that was a level D offense, the facts alleged in the complaint and the conduct Martinez–Mendoza admitted to at the plea hearing established a violation of Minn.Stat. § 609.342, subd. 1(h) (2010), which is a type of second-degree criminal sexual conduct that is a severity level B offense. The State, which had originally charged first-degree criminal sexual conduct in count I, was not attempting to subject Martinez–Mendoza to a more serious charge only after he pleaded guilty, nor was it attempting to subject Martinez–Mendoza to multiple trials for the same offense.

Finally, our recognition of the interrelationship in a plea agreement between a guilty plea to a lesser charge and the resulting sentence supports the conclusion that the district court should have granted the State's motion. *See State v. Lewis,* 656 N.W.2d 535 (Minn.2003). In *Lewis,* the parties agreed the defendant would plead guilty to a reduced charge but his resulting sentence would include an upward departure that was based only on the terms of the plea agreement. 656 N.W.2d at 536. After the defendant pleaded guilty and was sentenced pursuant to the terms of the plea agreement, we ruled that an upward departure could not be based only on the terms of a plea agreement, and the defendant challenged his sentence on appeal. *Id.* We questioned whether the defendant should be able to retain the benefit of a reduced charge if he obtained a reduction of the sentence component of the same plea agreement. *Id.* at 538–39. We held that on remand, the district court "should be free to consider the effect that changes in the sentence have on the entire plea agreement." *Id.* at 539.

*Lewis* provides a district court with the authority to consider vacating a plea agreement that involved a reduced charge if an appellate court determines the agreed-to sentence in the plea agreement was illegal. The rationale behind *Lewis* applies with equal force if a court learns it unknowingly accepted a plea agreement in which the defendant received the benefit of a reduced charge but also agreed to a sentence that is too high and cannot be legally imposed. In this situation, a court should be able to consider the effect that changes in the sentence have on the entire plea agreement and withdraw its acceptance of the plea agreement.

I would hold that the district court erred in denying the State's motion to withdraw the plea agreement. When the court learned that it had accepted Martinez–Mendoza's guilty plea based on a fundamental misunderstanding about the legal sentence that could be imposed for the offense to which he pleaded guilty, the interests of justice dictate that the court reject the plea agreement.

DIETZEN, Justice (dissenting).

I join in the dissent of Chief Justice Gildea.

ANDERSON, G. Barry, Justice (dissenting).

I respectfully dissent. I disagree with the majority's conclusion that this court lacks jurisdiction to consider respondent State of Minnesota's appeal in this case. It is my view that, by operation of law, the prosecutor could not have consented to the plea agreement. Minnesota Rule of Criminal Procedure 15.07 prohibited the district court from accepting appellant's guilty plea, and therefore jeopardy could not have attached.[1] Consequently, Minn. R.Crim. P. 28.04, subd. 2(8), which prohibits the State from appealing after jeopardy attaches, does not bar the State's appeal. Furthermore, because the plea agreement was void ab initio, the State was never bound to the terms of the agreement and thus may continue prosecution of Martinez–Mendoza.

The facts of this case are not in dispute, so I rely upon the majority's recitation of the full facts. In brief, both parties proposed a plea agreement to the district court that would "DISMISS COUNT I @ sentencing middle of the box or 90 months commit to prison on COUNT II."[2] The State, appellant, and appellant's lawyer all believed that count two would involve a sentence of close to 90 months in prison. The district court accepted the terms of

the plea agreement on the basis of that understanding. The State then proceeded to examine appellant, and appellant admitted the facts necessary to establish his guilt of second-degree criminal sexual conduct. The court accepted the guilty plea. Upon learning of the mistake, the State made a motion to amend the complaint, or in the alternative, withdraw from the plea agreement. The court, concluding jeopardy had attached, denied the State's motions. The State appealed the denial of its motions.

The threshold issue in this case is whether the State has a right to appeal the district court's denial of its motion to withdraw from the plea agreement. In Minnesota, the State's ability to appeal is limited—there must "be a statute or court rule that permits the appeal, or the issue must 'arise by necessary implication' from an issue where the State's right to appeal is expressly provided." *State v. Rourke*, 773 N.W.2d 913, 923 (Minn.2009) (quoting *In re C.W.S.*, 267 N.W.2d 496, 498 (Minn. 1978)). Minnesota Rule of Criminal Procedure 28.04, subd. 1(1), grants the prosecuting attorney the ability to appeal "in any case, from any pretrial order, including probable cause dismissal orders based on questions of law." But, "[n]o appeal of a pretrial order by the prosecutor can be taken after jeopardy has attached." *Id.*, subd. 2(8). Jeopardy attaches when the jury is empaneled and sworn in or, in the case of a bench trial, when the court be-

---

1. Minnesota Rule of Criminal Procedure 15.07 provides, "With the prosecutor's consent and the court's approval, the defendant may plead guilty to a lesser included offense or to an offense of lesser degree."

2. In the plea petition, the parties described the agreement as 90 months or the middle of the box. Appellant argues that the plain language of the agreement is legally possible because "middle of the box" can refer to the

36–month presumptive sentence even though no range is given in the presumptive sentence. But, appellant previously conceded to the district court at the investigative hearing that the contemplated prison sentence in the plea agreement "would be a 90–month commit to the Commissioner of Corrections." In light of that concession, appellant's "middle of the box" argument is not persuasive and the agreement clearly meant for a 90–month executed prison sentence.

gins to hear evidence. *State v. Crow*, 730 N.W.2d 272, 278 (Minn.2007) (quoting *Serfass v. United States*, 420 U.S. 377, 378, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). A void guilty plea cannot cause jeopardy to attach—the defendant would not have been placed in any peril of conviction. *See Ohio v. Johnson*, 467 U.S. 493, 501–02, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *Crist v. Bretz*, 437 U.S. 28, 35–38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Thus, I turn first to whether appellant's guilty plea was valid.

A defendant may only plead guilty to a lesser charged offense with the prosecutor's consent. Minn. R.Crim. P. 15.07. When reviewing plea agreements, we have consistently applied principles of contract law to determine the terms and validity of the agreement. *In re Ashman*, 608 N.W.2d 853, 858 (Minn.2000); *State v. Williams*, 418 N.W.2d 163, 168 (Minn.1988); *see also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Accordingly, an agreement that is contrary to established law and " 'is injurious to the interests of the public or contravenes some established interest of society' " is void, consequently negating the consent to that agreement as well. *Isles Wellness, Inc. v.*

*Progressive N. Ins. Co.*, 725 N.W.2d 90, 92–93 (Minn.2006) (quoting *In re Estate of Peterson*, 230 Minn. 478, 483, 42 N.W.2d 59, 63 (1950)); *see also Vercellini v. U.S.I. Realty Co.*, 158 Minn. 72, 74, 196 N.W. 672, 672 (1924) ("No transaction in violation of law can be made the foundation of a valid contract.").

Here, the agreement called for the imposition of a 90–month executed prison sentence for a crime that carried a 36–month stayed sentence. But, the 90–month prison sentence was illegal as it would be an invalid upward departure from the presumptive sentence. Minn. Sent. Guidelines II.D; *State v. Edwards*, 774 N.W.2d 596, 601 (Minn.2009). Accordingly, the plain terms of the plea agreement were contrary to existing law and contravened the public's interest in a fair sentencing scheme. Minn. Sent. Guidelines I. Thus, the plea agreement was void from inception, negating the prosecutor's consent to the agreement.[3] Consequently, Martinez–Mendoza's guilty plea was not valid because it did not meet the requirements of Minn. R.Crim. P. 15.07.[4]

---

**3.** Alternatively, contract law offers another theory under which the plea agreement could be void. Here, the parties were mistaken as to the length of the applicable sentence and it is clear that there was no "meeting of the minds" or mutual assent to a 36–month stayed sentence. *See Houghton v. Mendenhall*, 50 Minn. 40, 45, 52 N.W. 269, 270 (1892) (stating that a contract is void "where the mistake is of such a nature as to exclude any real consent of the parties; their minds not meeting in agreement upon the same matters"). Although we have applied a mutual mistake analysis to grant relief from a sentence, *see State v. DeZeler*, 427 N.W.2d 231 (Minn.1988), it is not necessary to apply that doctrine here to resolve this matter.

**4.** I recognize that Minn. R.Crim. P. 15.07 allows a court to, upon defendant's motion and after a hearing, accept a defendant's

guilty plea to an offense of a lesser degree without the prosecutor's consent if "the court is satisfied that the prosecutor cannot introduce sufficient evidence to justify the submission of the offense charged to the jury or that it would be a manifest injustice not to accept the plea." But, the defendant did not make a motion to plead guilty to a lesser offense without the prosecutor's approval. Consequently, the court did not hold a hearing to determine the merits of such a motion. Thus, the technical requirements of the rule were not met and the court did not have the authority to accept the plea agreement without the prosecutor's consent. Furthermore, the court stated on the record that it would not have accepted the guilty plea had it known the true sentence length; therefore, no legitimate argument can be made that a manifest injustice would have resulted had the court not accepted the plea agreement.

Because his guilty plea was not valid, Martinez–Mendoza was never placed in jeopardy as he was never validly adjudicated. Accordingly, the State's appeal is not barred by Minn. R.Crim. P. 28.04, subd. 2(8), and Minn.Stat. § 609.04, subd. 1 (2010), does not require the dismissal of count one. More importantly, however, the plea agreement was void ab initio; thus, the State does not need the court's permission to withdraw from the plea agreement because it was never legally bound in the first place. Consequently, I would remand the case to the district court for further proceedings on the charges alleged in the complaint.