**STATE of Minnesota, Respondent,**

v.

**Erik Lerone JEFFRIES, Appellant.**

**No. A09–1391.**

Supreme Court of Minnesota.

Oct. 19, 2011.

---

**58**

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Paul R. Scoggin, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Susan Andrews, Assistant State Public Defender, St. Paul, MN, for appellant.

OPINION

MEYER, Justice.

Appellant Erik Lerone Jeffries pled guilty to felony domestic assault and negotiated an agreement with the State in which Jeffries would receive a stayed sentence. The district court indicated at the plea hearing that it was accepting Jeffries' plea and that Jeffries was convicted. At a later date, the court told Jeffries it was "giving you your pleas back" and set the case for trial. Jeffries eventually reached another plea agreement with the State that resulted in a 60–month executed sentence. Jeffries appealed, arguing that the Double Jeopardy Clauses of the United States and Minnesota Constitutions prohibited the State from prosecuting him a second time for felony domestic assault. He also claimed ineffective assistance of counsel. The court of appeals affirmed the 60–month executed sentence. We reverse and remand.

I.

During an argument on January 22, 2008, Jeffries threw a glass egg at his girlfriend. The egg missed his girlfriend but hit his girlfriend's teenage daughter in the face, causing her to require stitches and miss several days of school. The State charged Jeffries with felony domestic assault, Minn.Stat. § 609.2242, subd. 4 (2010). The charge was enhanced to a felony because Jeffries had two prior domestic assault convictions within the previous ten years.

Jeffries reached a negotiated plea agreement with the State. Under the agreement, Jeffries would plead guilty to the charged offense and receive a 48–month stayed sentence, which represented a downward dispositional departure and an upward durational departure from the presumptive sentence under the sentencing guidelines. The downward dispositional

departure was due to "agreement of the parties and the defendant's acceptance of responsibility." The upward durational departure was based on Jeffries' "significant criminal history" and the nature of the injury to the victim.

At his plea hearing on June 13, 2008, Jeffries was arraigned, entered a guilty plea, presented his written plea petition, placed the required waivers on the record, and testified to the factual basis for the plea. He testified that he had convictions for two previous domestic assaults against the same girlfriend, and he agreed that the injuries to the daughter made the offense "a little more serious" than a typical fifth-degree assault. Jeffries was not asked about the remainder of his criminal history at this hearing.

> After Jeffries testified, the court said:
> Erik Lerone Jeffries, based upon the facts on the record, I'll accept your plea of guilty and find you guilty of the fifth degree domestic assault on January 22nd, 2008, in the City of Minneapolis. So you are convicted of that.
>
> I'm going to go ahead with the joint agreement of the parties and release you today on certain conditions, and then we'll have you back for sentencing in about six weeks or so out from today's date.

The court and the parties scheduled a date for the sentencing hearing. The following exchange then occurred:

> [PROSECUTOR]: Your Honor, I would like the record to reflect that the defendant's appearance at sentencing and his cooperation with the [pre-sentence investigation (PSI)] is a condition of the deal. So if he fails to cooperate with the pre-sentence investigation report, fails to appear for that, fails to provide the information, or fails to appear at sentencing, the plea will stand, but the deal is off.

> THE COURT: Okay. [Defense counsel], anything you would like to cover with regard to that?
> [DEFENSE COUNSEL]: Well, I think if the deal is off, then the deal should be off. They get the best of both worlds. If there's something that the probation officer doesn't like about his answer and they tell the court in their report that he didn't cooperate—
> THE COURT: I'm not anticipating the cooperation being the key. I'm anticipating if you don't show up—
> [DEFENSE COUNSEL]: He'll show up.
> THE COURT:—that's going to be the key.
> [DEFENSE COUNSEL]: He'll show up.
> THE COURT: Okay.
> [PROSECUTOR]: And that was what I meant by cooperation, when they make an appointment, that he actually appears and talks to the probation officer.
> THE COURT: Sure. Okay. All right.

The discussion moved on to the terms of a no-contact order that would be part of the conditions of release.

On the date set for sentencing, the district court indicated in discussions in chambers that it was no longer willing to accept the plea agreement. On the record, the court told Jeffries the reason for its decision:

> Good afternoon, Mr. Jeffries. I know this is a turn of events that is probably confusing for you. Let me just share a little bit of my thoughts with you. I accepted the pleas earlier. We have sentencing set in for today and then we had the presentence investigation done. To be candid with you, your history looked a lot worse than what I thought it was when I indicated that the plea

agreement probably would be acceptable. I'm not prepared to sentence you to a probationary sentence as it was outlined in the plea agreement basically because of the past criminal history and the different information that I have. But also I'll be candid with you. I don't think you'll be successful on probation, and you'd be looking at more time.

I understand that the State has filed a notice or will file the career offender enhancement in this case. That's a decision solely for the State to make. But because I'm not prepared to go forward with the sentencing, I'm giving you your pleas back. So you're not guilty, and your guilty pleas won't be used against you or anything. But we do have a trial date set for October 27 of 2008, and so we'll have the matter go to trial at that time if it isn't resolved in some other way prior to that.

The court then asked if Jeffries' attorney wanted to place anything on the record. Jeffries' attorney responded by inquiring about separate matters involving probation violations, but he did not object on the record to the court's action then or at any subsequent hearing before the district court.

The parties eventually reached a second plea agreement, and on March 31, 2009, Jeffries again pled guilty to felony domestic assault. Jeffries placed the required waivers on the record, testified to the facts underlying the charge, and agreed to an executed sentence of 22 months if he complied with the conditions of release or a 60–month executed sentence if he did not. The court accepted the plea, delayed sentencing, and released Jeffries on the conditions that he obey a no-contact order,

remain law abiding, and neither use nor possess drugs or alcohol.

Two days later, Jeffries was arrested for possession of marijuana. The district court held an evidentiary hearing, found that Jeffries had violated the conditions of his release, and imposed a 60–month executed sentence consisting of a minimum 40–month term of imprisonment and maximum 20 months of supervised release, with credit for 199 days served.

Jeffries appealed, asking that his conviction be vacated on the grounds (1) that the Double Jeopardy Clauses of the United States and Minnesota Constitutions barred the State from prosecuting him a second time for felony domestic assault, and (2) that his counsel was ineffective by not raising double jeopardy as an affirmative defense. The court of appeals affirmed in a published decision, holding that Jeffries waived his double-jeopardy claim by pleading guilty a second time and that he had not shown that he was deprived of effective assistance of counsel.[1] *State v. Jeffries,* 787 N.W.2d 654, 661–62 (Minn.App. 2010). We granted review.

### II.

■ The Fifth Amendment to the U.S. Constitution, as applied to the states through the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Minnesota Constitution similarly provides that "no person shall be put twice in jeopardy of punishment for the same offense." Minn. Const. art. I, § 7. The Double Jeop-

---

1. Because we hold in Jeffries' favor on his double-jeopardy claim, we do not reach the ineffective-assistance-of-counsel issue.

ardy Clause[2] protects against multiple punishments for the same offense and against a second prosecution after an acquittal or conviction. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *accord State v. Humes*, 581 N.W.2d 317, 320 (Minn.1998). In Minnesota, a defendant is convicted when the district court accepts and records a guilty plea. Minn.Stat. § 609.02, subd. 5 (2010).

Jeffries argues that there was a violation of the Double Jeopardy Clause in this case because he was subjected to a second prosecution after an earlier conviction for the same offense. The State argues that Jeffries was never convicted in connection with his first guilty plea because the district court did not unconditionally accept his guilty plea and because it was not recorded.[3] The State further argues that Jeffries forfeited his double-jeopardy claim by entering the second guilty plea.

Determining whether Jeffries was convicted when the district court pronounced him guilty raises two questions: (1) did the district court unconditionally accept Jeffries' guilty plea, and (2) did it record the

plea? We answer each of these questions in turn. We then address the argument that Jeffries forfeited his double-jeopardy claim.

### A.

■ The Minnesota Rules of Criminal Procedure define the obligations of a district court when a defendant tenders a guilty plea. The plea "shall be made orally on the record by the defendant." Minn. R.Crim. P. 14.02 (2009) (amended effective Jan. 1, 2010). The court must then question the defendant to ensure that the defendant is intelligently and voluntarily pleading to the crime charged, that the defendant is aware of the rights he is waiving by pleading guilty, and that the defendant does not claim innocence. Minn. R.Crim. P. 15.01, subd. 1 (2009) (amended effective Jan. 1, 2010). The defendant must then testify to the factual basis for the plea. *Id.* If the court finds that the plea is valid,

> the trial court judge shall reject or accept the plea of guilty on the terms of the plea agreement. The court may postpone its acceptance or rejection un-

---

**2.** For ease of reference, we refer to both clauses collectively as "the Double Jeopardy Clause."

**3.** A common issue in double jeopardy cases is when jeopardy has attached. *See, e.g., Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). The concept of attachment of jeopardy is useful in cases in which a prosecution has not terminated in a conviction or acquittal. *See, e.g., Crist v. Bretz*, 437 U.S. 28, 34, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) (noting that "it became firmly established by the end of the 19th century that a defendant could be put in jeopardy even in a prosecution that did not culminate in a conviction or an acquittal"). But because the Double Jeopardy Clause "protects against a second prosecution for the same offense after conviction," *Brown*, 432 U.S. at 165, 97 S.Ct. 2221, a conviction precludes further prosecution unless a defendant has his conviction overturned, *Justices of Bost. Mun.*

*Court v. Lydon*, 466 U.S. 294, 308, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) ("[T]he [Double Jeopardy] Clause does not bar reprosecution of a defendant whose conviction is overturned on appeal."), or other exceptions apply that are not relevant here, *cf. Jeffers v. United States*, 432 U.S. 137, 151–52, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (noting exceptions to the *Brown v. Ohio* rule when (1) a defendant was convicted of a lesser crime and the events necessary for the greater crime had not taken place at the time the prosecution for the lesser crime began and (2) "when the facts necessary to the greater were not discovered despite the exercise of due diligence before the first trial"). As a result of our holding that Jeffries was convicted when the district court unconditionally accepted and recorded his guilty plea, we do not need to decide whether jeopardy constitutionally attaches upon mere acceptance of a plea.

til it has received the results of a presentence investigation. If the court rejects the plea agreement, it shall so advise the parties in open court and then call upon the defendant to either affirm or withdraw the plea.

Minn. R.Crim. P. 15.04, subd. 3(1) (2009) (amended effective Jan. 1, 2010). Thus, at a hearing after a defendant tenders a valid guilty plea, the trial court may order any of three separate dispositions: accept the plea on the terms of the plea agreement, reject the plea, or defer its decision to accept or reject the plea pending completion of a presentence investigation. *See State v. Thompson,* 754 N.W.2d 352, 356 (Minn.2008). If the court rejects the plea agreement, it must advise the parties in open court and then call upon the defendant to either affirm or withdraw the plea. Minn. R.Crim. P. 15.04, subd. 3(1).

The parties dispute whether the district court accepted Jeffries' guilty plea. Jeffries argues that the court's statement that "I'll accept your plea of guilty and find you guilty of the fifth degree domestic assault.... So you are convicted of that," plainly demonstrates that the district court accepted his guilty plea. The State argues that the court did not *unconditionally* accept Jeffries' guilty plea because the conversation immediately after the court said, "So you are convicted of that," shows that the parties did not believe that the plea deal had been finalized.

In considering whether the district court accepted Jeffries' guilty plea, the facts in *State v. Thompson* offer a useful comparison. In that case, the district court "indicated it 'would * * * adjudicate[ ]' Thompson guilty of the charge," but said that it would " 'reserve a decision as to the appropriateness of the plea agreement pending the results of the [PSI].' " *Id.* at 353, 356 (alterations in original). We concluded that the court had not accepted the guilty

plea on the terms of the sentencing agreement and had thus postponed its acceptance of the plea. *Id.* at 356.

The record in this case contains no similar indication that the district court intended to postpone its decision to accept the plea or to accept the plea on terms other than those agreed to by the parties. The court instead said, "I'll accept your plea of guilty" and "you are convicted of that." It did so not lightly or in passing, but as a formal statement that included the precise charge and the date and location of the offense. Although the parties argued shortly thereafter about whether Jeffries' cooperation with the PSI and appearance at sentencing were conditions of the plea deal, there was no indication by the parties or the court that the court intended to postpone its acceptance of the guilty plea. And the court's statement at the subsequent sentencing hearing acknowledged that the court had previously accepted the plea, both by saying so explicitly ("I accepted the pleas earlier") and by acknowledging that the "turn of events [was] probably confusing" to Jeffries.

According to Justice G. Barry Anderson's dissent, the record does not support a "conclusion that the district court unconditionally accepted Jeffries' guilty plea at the plea hearing." Justice Anderson contends that the court implicitly postponed acceptance of Jeffries' guilty plea when the court said, "[B]ased upon the facts on the record, I'll accept your plea of guilty and find you guilty," and when the district court emphasized that it was important for Jeffries to meet with a probation officer and fully cooperate with PSI process. We conclude that the statements on which Justice Anderson relies are insufficient to overcome the district court's express declarations that, "I'll accept your plea of guilty" and "you are convicted of that."

The Chief Justice states in her dissent that "the district court was exercising its discretion to withdraw its acceptance of a guilty plea once it learned of additional information about Jeffries' criminal history." The rules provide no authority for a district court to withdraw its unconditional acceptance of a plea agreement. *See* Minn. R.Crim. P. 15.04 (2009) (amended effective Jan. 1, 2010). The finality of acceptance of a plea of guilty is incompatible with a later withdrawal of that acceptance. *See* Rule 15.04 (stating that "the trial court judge shall reject or accept the plea of guilty on the terms of the plea agreement").

We hold that the district court in this case used clear and unambiguous language of acceptance of the plea of guilty, and that it did so unconditionally. We limit our holding to the facts of this case and do not suggest that the words "convicted" or "I accept your plea" are magic words that will always result in a conviction for double jeopardy purposes. That is because Rule 15.04, subd. 3, plainly states that the trial court judge may postpone acceptance of a plea agreement until sentencing. If a trial court judge wants to reserve the option to accept or reject a plea agreement until after reviewing the PSI report, the court should postpone its acceptance of the plea of guilty. A decision to postpone *acceptance* of the guilty plea does not prevent the district court from making a record on the issue of whether the defendant has *entered* a valid guilty plea. In making such a record, the district court may establish the factual basis for the plea, and question the defendant to ensure that the defendant is intelligently and voluntarily pleading to the crime charged, that the defendant is aware of the rights he is waiving, and that the defendant does not claim innocence.

**B.**

■ We next consider whether the accepted guilty plea was "recorded" pursuant to Minn.Stat. § 609.02, subd. 5. Jeffries argues that the guilty plea was "recorded" by its inclusion in the record of the plea hearing. We agree.

■ Court-accepted guilty pleas, jury verdicts of guilt, and findings of guilt by a court are often referred to as "convictions," but a formal adjudication of conviction requires more. "For accepted pleas, verdicts, or findings of guilt to become convictions under Minnesota law, the conviction must be recorded." *State v. Hoelzel*, 639 N.W.2d 605, 609 (Minn.2002) (emphasis added). "The general practice, and a practice to which district courts should adhere, is to have the conviction recorded and appear in a judgment entered in the file." *Id.* The clerk's record of judgment shall include "the plea, the verdict of findings, and the adjudication and sentence." *Id.;* Minn. R.Crim. P. 27.03, subd. 7 (2009) (amended effective Jan. 1, 2010).

Although a formal judgment of conviction is sufficient to satisfy the recording requirement, it is not the only way the requirement may be met. A defendant may stand convicted before he is sentenced. Thus, "the clerk's entry of the judgment of conviction under Minn. R.Crim. P. 27.03, subd. 7, is not required to satisfy the Minn.Stat. § 609.02 requirement that a guilty plea be 'recorded by the court.'" *Thompson*, 754 N.W.2d at 356 n. 4. We recently specified the conditions under which a guilty plea can meet the recording requirement. In *State v. Martinez–Mendoza*, we concluded that "a court 'records' a guilty plea upon accepting the guilty plea and adjudicating the defendant guilty on the record." 804 N.W.2d 1, 6 (Minn.2011).

In this case, the district court accepted Jeffries' guilty plea and adjudicated Jef-

fries guilty on the record. We therefore hold Jeffries was convicted of felony domestic assault at the first hearing, which occurred on June 13, 2008, because the district court unconditionally accepted his guilty plea and adjudicated him guilty on the record. The conviction at that hearing for the offense of felony domestic assault prevented a second prosecution for the offense of felony domestic assault. Consequently, Jeffries' second conviction must be vacated.

In sum, Jeffries was convicted of felony domestic assault at the first plea hearing. The second prosecution for the same offense violated the Double Jeopardy Clause and must be set aside, unless the State is correct that Jeffries forfeited his double-jeopardy claim.

## C.

■ We turn to the question of whether Jeffries forfeited his double-jeopardy claim by entering a second guilty plea.

■ "A guilty plea by a counseled defendant has traditionally operated, in Minnesota and in other jurisdictions, as a waiver of all non-jurisdictional defects arising prior to the entry of the plea." *State v. Ford*, 397 N.W.2d 875, 878 (Minn.1986) (citing *State v. Lothenbach*, 296 N.W.2d 854, 857 (Minn.1980)).[4] "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

Whether a double-jeopardy defense is forfeited by this rule is the subject of conflicting precedent. In 1967 we held that double jeopardy is an affirmative defense that is forfeited if not raised. *See State ex rel. Boswell v. Tahash*, 278 Minn. 408, 415, 154 N.W.2d 813, 817–18 (1967). The U.S. Supreme Court, however, eight years later, held that a counseled guilty plea does not bar a defendant from raising a double-jeopardy claim on appeal. *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). The Court wrote that "a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. . . . A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt." *Id.* at 62 n. 2, 96 S.Ct. 241. But where "the claim is that the State may not convict petitioner no matter how validly his factual guilt is established," that claim is not barred by a plea of guilty if the claim can be proven based on the existing record. *Id.; cf. United States v. Broce*, 488 U.S. 563, 576, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (holding that the defendants' guilty pleas foreclosed their double-jeopardy claims because those claims could not be proven "by relying on [the] indictments and the existing record").

The State argues that our decision in *Boswell*, not the Supreme Court's holding in *Menna*, is the controlling law in this case, and that Jeffries' March 31, 2009, guilty plea forfeited his double-jeopardy claim. The State argues that *Boswell* is the controlling law and *Menna* is not, be-

---

4. Although we have used the term "waiver," the effect of a guilty plea is more accurately described as a forfeiture. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

cause forfeiture is a procedural rule that is controlled by state law. The State argues in the alternative that forfeiture is like retroactivity, and should be controlled by state law. *See Danforth v. Minnesota*, 552 U.S. 264, 290–91, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008) (holding that the law of retroactivity is controlled by state law because retroactivity is "primarily concerned, not with the question whether a constitutional violation occurred, but with the availability or nonavailability of remedies").

■ We find the State's argument unpersuasive. The language of *Menna* itself indicates the Supreme Court did not merely establish a procedural rule. "Where the State is precluded *by the United States Constitution* from haling a defendant into court on a charge, *federal law* requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Menna*, 423 U.S. at 62, 96 S.Ct. 241 (emphasis added). The emphasized language indicates that it is the U.S. Constitution and federal law that prevent a double-jeopardy claim from being automatically waived by a guilty plea, not a mere procedural rule or the availability or nonavailability of a remedy. Furthermore, *Menna* came to the Supreme Court on certiorari to the New York Court of Appeals, which strongly suggests that the rule announced in that case was generally applicable to the states.

Nor do we interpret *Danforth* to imply that *Menna* is not controlling. Although "the remedy a state court chooses to provide its citizens for violations of the Federal Constitution is primarily a question of state law," we are not free to provide *less* of a remedy than required by federal law. *Danforth*, 552 U.S. at 288, 128 S.Ct. 1029. To the contrary, "[f]ederal law simply 'sets certain minimum requirements that States must meet but may exceed in providing appropriate relief.'" *Id.* (quoting *Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 178–79, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990)). We may give broader effect to new rules of criminal procedure than required by the Supreme Court, but we may not provide less of a remedy.

We therefore conclude that *Menna* is binding on the states, and hold that a counseled guilty plea does not bar a defendant from raising a double-jeopardy claim on appeal if that claim can be decided on the existing record at the time the defendant pleads guilty. We overrule *State ex rel. Boswell v. Tahash* to the extent it conflicts with our holding in this case. Because Jeffries' double-jeopardy claim can be decided on the existing record, that claim was not forfeited by his March 31, 2009, counseled guilty plea, and we therefore vacate his second conviction for felony domestic assault.

### III.

■ We turn to the appropriate remedy. Jeffries argues that the proper result of a holding in his favor on his double-jeopardy claim is to vacate both of his convictions. We disagree. Although Jeffries' conviction based on his second guilty plea must be set aside, the appropriate remedy for a double-jeopardy violation following conviction is to reinstate the initial plea according to the terms of the agreement. *See, e.g., United States v. Patterson*, 381 F.3d 859, 865–66 (2004) (holding that the defendant was properly convicted of the original charge, and thus the appropriate remedy was to reinstate the original guilty plea and remand for sentencing according to that plea). Therefore, we reverse Jeffries' conviction and sentence, and remand to the district court for resentenc-

ing on the conviction of felony assault dated June 13, 2008.

Reversed and remanded.

STRAS, Justice (concurring).

I join the court's opinion. The court's analysis, in my view, is a straightforward and unexceptional application of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. I write separately, however, to emphasize two points.

First, as the court recognizes, the district court unambiguously convicted Jeffries when it stated, on the record, "I'll accept your plea of guilty and find you guilty of the fifth degree domestic assault.... So you are convicted of that." The language used by the district court in accepting Jeffries' guilty plea was clear and unambiguous. If the court intended to conditionally accept Jeffries' plea at the June 13, 2008 hearing, it could have used language to that effect. And even if the court made a mistake in entering and recording the conviction after accepting Jeffries' guilty plea, I would not disregard the court's plain and unambiguous language in favor of an approach in which we attempt to discern what the court *really* meant by its words.

Second, the Double Jeopardy Clause barred the district court's acceptance of Jeffries' second guilty plea because the court had already convicted Jeffries once.

Here, the district court unambiguously convicted Jeffries of the crime of felony domestic assault, then unambiguously *un*convicted Jeffries by giving him his "pleas back" and telling him that he was "not guilty" at a subsequent hearing,[1] and then unambiguously convicted him again of felony domestic assault at yet another hearing after accepting a second plea agreement with a more severe punishment. At the risk of oversimplifying the issue in this case, the question is not whether jeopardy attaches when a guilty plea is accepted, but rather whether the Double Jeopardy Clause prohibits two *convictions* for the exact same crime.[2] I have been unable to locate a single case from any jurisdiction permitting a trial court to convict a defendant, then unconvict the defendant because the court was surprised by the defendant's criminal history, and subsequently reconvict the defendant of the exact same offense. The absence of authority on this question is no doubt due to the Supreme Court's repeated recognition that the Double Jeopardy Clause "protects an individual against being twice convicted for the same crime." *Abney v. United States,* 431 U.S. 651, 660, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *see also Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (stating that the Double Jeopardy Clause "protects against a second prosecution for the same offense after conviction"); *Price v. Georgia,* 398 U.S. 323, 326,

1. To demonstrate the unusual circumstances of this case, "unconvict" is not a word. Yet it is also clear that the district court did not acquit the defendant of the crime of felony domestic assault in the conventional sense because the district court followed its adjudication of Jeffries as "not guilty" with the setting of a trial date. Thus, I use "unconvict" because no other term accurately describes the unusual actions of the district court in this case.

2. Once the district court convicted Jeffries, it was immaterial whether the basis of the conviction was a guilty plea or a jury verdict. A conviction based on a guilty plea is entitled to the same respect under the Double Jeopardy Clause as a conviction based on a jury verdict. A defendant who is convicted and then later unexpectedly "unconvicted" by the district court unquestionably lives "in a continuing state of anxiety and insecurity." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) ("The 'twice put in jeopardy' language of the Constitution thus relates to a potential, *i.e.*, the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried."). Having been once convicted under the laws of this state, the plain language of the Double Jeopardy Clause unambiguously protects Jeffries from being put in jeopardy a second time for that same offense. *See* U.S. Const. amend. V ("[N]or shall any person be subject for the *same offense* to be twice put in jeopardy of life or limb." (emphasis added)).

Accordingly, because Jeffries had already been convicted of felony domestic assault by the time the district court withdrew its acceptance of Jeffries' guilty plea, and no recognized exception to double jeopardy applies, I agree with the court's decision to reverse Jeffries' second conviction, reinstate his first conviction, and remand for further proceedings.

GILDEA, Chief Justice (dissenting).

I respectfully dissent. I agree with the majority's conclusion that appellant Erik Jeffries did not forfeit his double-jeopardy claim by entering his second guilty plea. I disagree, however, with the majority's conclusion that the district court's vacation of Jeffries' first guilty plea to felony domestic assault and the continued prosecution of him violated the Double Jeopardy Clause. I would hold jeopardy had not attached when the district court vacated Jeffries' first guilty plea. As a result, allowing the continued prosecution of Jeffries for felony domestic assault did not violate the Double Jeopardy Clause. I would also hold that because Jeffries consented to the district court's vacation of his first guilty plea, jeopardy did not terminate in the proceeding, and therefore, allowing the State to continue its prosecution of Jeffries for felo-

ny domestic assault did not violate the Double Jeopardy Clause.

Before I begin my analysis of the legal issues, a recitation of the relevant facts is necessary. Respondent State of Minnesota charged Jeffries with felony domestic assault, resulting from a January 2008 incident. The State provided notice that it would seek an upward departure under the career-offender statute. The parties reached a plea agreement that contained a negotiated sentence. Jeffries would plead guilty to the charged offense, and he would receive a 48–month stayed sentence, which included a 12–month upward durational departure and a downward dispositional departure. At the plea hearing on June 13, 2008 ("first plea hearing"), the district court stated that "based upon the facts on the record, I'll accept your plea of guilty and find you guilty of the fifth degree domestic assault.... So you are convicted of that."

Before the sentencing hearing, the district court informed the parties in chambers that it was rejecting the plea agreement. On the record in open court, the district court said, "I accepted the pleas earlier," but "your history looked a lot worse than what I thought it was." The court explained that it was "not prepared to sentence [Jeffries] to a probationary sentence as it was outlined in the plea agreement basically because of the past criminal history and the different information that I have." The district court told Jeffries, "I'm giving you your pleas back. So you're not guilty." The district court then asked Jeffries' attorney if he wanted to place anything on the record. Jeffries' attorney responded by inquiring about separate matters involving probation violations and did not object on the record to the court's action then or at any subsequent hearing.

Jeffries later renegotiated a guilty plea, which was accepted by the district court. Jeffries was convicted based on this plea of guilty to felony domestic assault and sentenced to 60 months' imprisonment.

## I.

In order for the protections of the Double Jeopardy Clause to apply, jeopardy must first attach in a criminal proceeding. *See Serfass v. United States,* 420 U.S. 377, 390–91, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Neither the Supreme Court nor our court has expressly decided when jeopardy attaches in a criminal proceeding when there is no trial and the defendant pleads guilty. *See Ricketts v. Adamson,* 483 U.S. 1, 8, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (stating that the Court "assume[d] that jeopardy attached at least when respondent was sentenced ... on his plea of guilty."). But the Supreme Court has spoken on what factors should be considered in determining whether jeopardy has attached.

In *Crist v. Bretz,* the Supreme Court held that the federal rule that jeopardy attaches in a jury trial when the jury is empaneled and sworn is an integral part of the Fifth Amendment guarantee against double jeopardy and is applicable to the states. 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The Court explained that "[t]he basic reason for holding that a defendant is put in jeopardy" before a verdict is rendered is to protect "the finality of judgments, the minimization of harassing exposure to the harrowing experience of a criminal trial, and the valued right to continue with the chosen jury." *Id.* at 35, 38, 98 S.Ct. 2156. Protection against these concerns is based on the underlying idea ... that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged of-fense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 35, 98 S.Ct. 2156 (quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). The Court concluded that "[t]hose concerns ... have combined to produce the federal law that in a jury trial jeopardy attaches when the jury is empaneled and sworn." *Id.* at 38, 98 S.Ct. 2156.

The Supreme Court has also indicated that when a defendant pleads guilty, the Double Jeopardy Clause's concerns regarding finality and government overreaching are not always at issue. In *Ohio v. Johnson,* the Supreme Court ruled that if the defendant pleaded guilty only to the lesser-included offenses he was charged with, over the State's objection, it did not violate double jeopardy to allow the State to continue its prosecution of the greater offenses. 467 U.S. 493, 501–02, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). The Court concluded that "[n]o interest of [the defendant] protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment." *Id.* at 501, 104 S.Ct. 2536. In such a circumstance, "[t]here simply has been none of the governmental overreaching that double jeopardy is supposed to prevent." *Id.* at 502, 104 S.Ct. 2536. Moreover, the defendant has "not been exposed to conviction on the charges to which he pleaded not guilty," and the "acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending ... has none of the implications of an 'implied acquittal' which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both

greater and lesser included offenses." *Id.* at 501–02, 104 S.Ct. 2536.

Other courts have concluded that jeopardy does not attach when a district court accepts a guilty plea prior to sentencing because the concerns the Double Jeopardy Clause were intended to protect were not implicated. *United States v. Santiago Soto,* 825 F.2d 616, 618–20 (1st Cir.1987) (holding that jeopardy did not attach when district court accepted guilty plea but then vacated guilty plea sua sponte prior to sentencing); *Gilmore v. Zimmerman,* 793 F.2d 564, 569–70 (3d Cir.1986) (holding that jeopardy was "not implicated" when a trial court accepted a defendant's negotiated guilty plea, sua sponte vacated the plea, and then convicted the defendant on a greater charged offense); *State v. Angel,* 132 N.M. 501, 51 P.3d 1155, 1157, 1159 (2002) (holding that jeopardy did not attach to the defendant's plea to a misdemeanor DWI charge prior to being sentenced on that offense and that the defendant's subsequent prosecution for felony DWI after the misdemeanor charge was dismissed "violates none of the interests protected by double jeopardy"); *State v. Burris,* 40 S.W.3d 520, 525–26 (Tenn.Crim.App.2000) (holding that jeopardy did not attach when a district court accepted a guilty plea and the district court later withdrew its acceptance of the guilty plea prior to sentencing).

Applying that reasoning to the facts of this case, I conclude that jeopardy did not attach at the first plea hearing even if, as the majority concludes, the district court accepted Jeffries' first guilty plea to felony domestic assault because sentence was not imposed at that hearing. The concerns the Double Jeopardy Clause protects—the finality of judgments, the minimization of harassing exposure to the harrowing experience of a criminal trial, and the valued right to continue with the chosen jury—

are not at issue when a district court accepts a guilty plea but does not impose sentence. The constitutional policy of finality is not threatened by a district court's acceptance of a guilty plea prior to sentencing because the mere acceptance of a guilty plea does not carry the same expectation of finality and tranquility that comes with a jury's verdict. There also was no government overreaching because Jeffries did not experience the expense, strain, and embarrassment of a trial. In fact, Jeffries has not been subject to one trial, let alone multiple trials. *See Crist,* 437 U.S. at 38, 98 S.Ct. 2156. And because no trial has occurred, the valued right to continue with a chosen jury is not threatened. *See id.*

Consequently, I conclude that jeopardy did not attach when the district court accepted Jeffries' first guilty plea to felony domestic assault but prior to sentencing him on that offense. Because jeopardy had not attached, I also conclude that Jeffries' right against double jeopardy was not violated when the district court withdrew its acceptance of Jeffries' plea agreement at the sentencing hearing, vacated Jeffries' guilty plea, and continued the criminal proceedings in this case.

## II.

Instead of addressing when jeopardy attached in this case, the majority determines that Jeffries was convicted of felony domestic assault under Minnesota law when the district court accepted and recorded his first guilty plea at the first plea hearing. The majority then summarily concludes that because Jeffries was convicted at his first plea hearing, he was subject to a second prosecution for the same offense, in violation of the Double Jeopardy Clauses of the United States and Minnesota Constitutions, when the district court vacated Jeffries' guilty plea at the

sentencing hearing and continued the criminal proceedings on the felony domestic-assault charge. The majority's analysis is overly simplistic and ignores Supreme Court decisions regarding how courts should determine whether a double-jeopardy violation has occurred.

It is certainly true that the Double Jeopardy Clause bars a second prosecution for the same offense following conviction. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). This rule, however, is not absolute. *Justices of Bos. Mun. Court v. Lydon*, 466 U.S. 294, 308, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) ("The Double Jeopardy Clause is not an absolute bar to successive trials."); *Jeffers v. United States*, 432 U.S. 137, 151, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) ("The rule established in *Brown*, however, does have some exceptions."). Decisions by the Supreme Court have consistently recognized that the finality guaranteed by the Double Jeopardy Clause when a defendant is convicted is limited. *See, e.g., Brown*, 432 U.S. at 169 n. 7, 97 S.Ct. 2221 (noting that a defendant who has been convicted of a lesser offense may be later tried for a greater offense when all the events necessary to the greater crime have not taken place at the time the prosecution for the lesser offense begins); *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) (holding that the Double Jeopardy Clause does not preclude the retrial of a defendant who has a conviction set aside after successfully arguing that a guilty plea was not voluntary); *United States v. Ball*, 163 U.S. 662, 671–72, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) (explaining that the Double Jeopardy Clause does not bar the retrial of a defendant who is convicted after a jury trial but has his conviction overturned).

The proper analysis requires that courts consider whether the interests the Double Jeopardy Clause were designed to protect are at issue when determining whether the Double Jeopardy Clause has been violated. *See Johnson*, 467 U.S. at 495, 501–02, 104 S.Ct. 2536 (holding that if the defendant pleaded guilty and was sentenced for only the lesser-included offenses he was charged with, over the State's objection, it did not violate double jeopardy to allow the State to continue its prosecution of the greater offenses and concluding that "[n]o interest of [the defendant] protected by the Double Jeopardy Clause is implicated by continuing the prosecution on the remaining charges brought in the indictment"); *Jeffers*, 432 U.S. at 152, 97 S.Ct. 2207 ("Both the trial after appeal and the trial after the mistrial are, in a sense, a second prosecution for the same offense, but, in both situations, the policy behind the Double Jeopardy Clause does not require prohibition of the second trial."); *see also United States v. Scott*, 437 U.S. 82, 84, 96, 100, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (holding that it did not violate double jeopardy to allow the State to appeal the district court's midtrial dismissal of two of three drug charges pending against him for pre-indictment delay and stating that "[n]o interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to the defendant").

The interests protected by the Double Jeopardy Clause's prohibition against a second prosecution following conviction are not invaded when a district court withdraws its acceptance of a plea agreement and vacates a defendant's guilty plea after receiving information about the defendant's criminal history that causes the district court to believe that the plea agreement does not serve the interest of

justice.[1] The Supreme Court has indicated that "[t]he primary purpose of foreclosing a second prosecution after conviction ... is to prevent a defendant from being subjected to multiple punishments for the same offense." *Lydon*, 466 U.S. at 307, 104 S.Ct. 1805. Jeffries, however, was not subject to multiple punishments for the same offense, as the district court only sentenced him once for felony domestic assault after his second guilty plea. There is no government overreaching or harassment. Instead, the district court was exercising its discretion to withdraw its acceptance of a guilty plea once it learned of additional information about Jeffries' criminal history that caused the court to believe the plea agreement was not in the interest of justice. And the explanations I provide for why the concerns the Double Jeopardy Clause protects are not at issue after a district court accepts a guilty plea but prior to sentencing apply equally here. As a result, even if Jeffries was convicted of felony domestic assault at the first plea hearing, Jeffries' protection against double jeopardy was not violated when the district court later withdrew its acceptance of the plea agreement and vacated Jeffries' guilty plea to felony domestic assault.

## III.

In the alternative, even if the majority is correct and jeopardy did attach at the first plea hearing, I would conclude that there was no double-jeopardy violation in this case. In order for a defendant to be twice put in jeopardy in violation of the Double Jeopardy Clause, jeopardy must terminate in the first proceeding. *See Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) ("[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event ... which terminates the original jeopardy."). The majority wrongly assumes that jeopardy terminated because the defendant was convicted at the first plea hearing. A conviction, however, does not automatically terminate jeopardy. Instead, when a defendant requests or consents to a certain course of conduct, he or she cannot later claim that such conduct resulted in a double-jeopardy violation under the notion of continuing jeopardy. The defendant's conduct can continue jeopardy in a proceeding, even if the defendant has been convicted.

The facts of this case show that Jeffries acquiesced, or consented by his conduct, to the district court's vacation of his first guilty plea and the continuation of the felony domestic-assault proceedings. In such a circumstance, jeopardy did not terminate but instead continued. Jeffries has no valid double-jeopardy claim based on the district court's vacation of his first guilty plea and the continuation of the underlying criminal proceeding.

The Double Jeopardy Clause is not an absolute bar to successive trials. *Lydon*, 466 U.S. at 308, 104 S.Ct. 1805. If a defendant seeks to have his conviction overturned on appeal or if a defendant who was convicted based on a guilty plea successfully moves to have a guilty plea withdrawn, the Double Jeopardy Clause does not preclude a retrial of the defendant. *Tateo*, 377 U.S. at 466–67, 84 S.Ct. 1587;

---

1. A district court "may accept a plea agreement of the parties when the interest of the public in the effective administration of justice would thereby be served." Minn. R.Crim. P. 15.04, subd. 3(2) (2009) (amended effective Jan. 1, 2010). In my dissent in *State v. Martinez–Mendoza*, I explain how Minn.

R.Crim. P. 15.04, subd. 3(1), provides the district court with the authority to withdraw its acceptance of a plea agreement if it later receives information that the plea agreement does not serve the interest of justice. *See State v. Martinez–Mendoza*, 804 N.W.2d 1, 12–16 (Minn.2011).

*Ball,* 163 U.S. at 671–72, 16 S.Ct. 1192. A defendant who opposes the government's motion to join charges that were filed separately for trial cannot later argue that a conviction on one of the charges after a trial bars a trial on the other charge. *Jeffers,* 432 U.S. at 151–52, 97 S.Ct. 2207. Similarly, whether it violates the Double Jeopardy Clause to retry a defendant after a mistrial is declared depends, in part, on whether the defendant requested or consented to the mistrial. *See United States v. Dinitz,* 424 U.S. 600, 608, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

Underlying these decisions is the "concept of 'continuing jeopardy.'" *Lydon,* 466 U.S. at 308, 104 S.Ct. 1805. The interests supporting the concept of continuing jeopardy include "fairness to society, lack of finality, and limited waiver." *Price v. Georgia,* 398 U.S. 323, 329 n. 4, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). As the Court has explained, "the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." *Scott,* 437 U.S. at 99, 98 S.Ct. 2187. Under the notion of continuing jeopardy, jeopardy does not terminate in the first proceeding, despite the conviction or the declaration of a mistrial. *Lydon,* 466 U.S. at 309, 104 S.Ct. 1805. Where jeopardy has not terminated, a retrial does not violate the Double Jeopardy Clause. *See Richardson,* 468 U.S. at 325, 104 S.Ct. 3081.

These cases support the conclusion that when a defendant requests or consents to action taken by a court, he or she cannot later contend that such action violated his or her right against double jeopardy. In the instant case, in chambers before the sentencing hearing, the district court informed the parties that it was rejecting the plea agreement. When the district court later told Jeffries during the sentencing hearing that it was not willing to sentence him under the terms of the plea agreement and that it was giving Jeffries his plea back, Jeffries did not object or ask to maintain his guilty plea. Instead, when the district court asked Jeffries' counsel if he wanted to make a record, counsel said nothing about the district court's vacation of his guilty plea and brought up other issues. Jeffries himself did not object to the vacation of his guilty plea. In these circumstances, I would conclude that Jeffries consented to the district court's vacation of his guilty plea.

In many contexts, we have construed a defendant's failure to object as the defendant's acquiescence, or implied consent based on conduct, to a certain action. *See State v. Martin,* 723 N.W.2d 613, 621 (Minn.2006) (finding defendant, by his failure to object, acquiesced to agreement that defendant did not have to be present when the district court responded to questions from the jury); *State v. Blom,* 682 N.W.2d 578, 617 (Minn.2004) (concluding that "[a] court may imply a waiver from a defendant's conduct"); *State v. Provost,* 490 N.W.2d 93, 97 (Minn.1992) (construing defendant's failure to object as acquiescence to his counsel's concession that the defendant was guilty of a lesser charge and rejecting defendant's argument "that there must be a 'contemporaneous' record made of the defendant's consent to his counsel's strategy of admitting guilt to a lesser charge"); *State v. Smith,* 299 N.W.2d 504, 506 (Minn.1980) ("Without anything in the record suggesting otherwise, we must presume that the decision not to testify was made by defendant voluntarily and intelligently.").

I would apply that same rationale here and conclude that when a district court informs a defendant that it will not sentence him or her pursuant to the terms of the plea agreement and that it is vacating

the defendant's guilty plea, the defendant's failure to object after being directly asked by the district court if he wants to respond constitutes the defendant's acquiescence, or implied consent, to the vacation of his or her guilty plea. When a district court rejects a plea agreement, the defendant can either affirm or withdraw the plea. Minn. R.Crim. P. 15.04, subd. 3(1). Thus, when the district court told Jeffries at the sentencing hearing that it was rejecting the plea agreement because it was not willing to sentence him to the probationary sentence agreed to by the parties, Jeffries could have affirmed his plea, knowing that the terms of the plea agreement no longer applied and that he would receive an executed sentence, or he could have indicated that he wanted to withdraw the plea. Considering the legal consequences of a district court rejecting a plea agreement, the only reasonable inference from Jeffries' failure to object is that he did not want to maintain his guilty plea if he was going to receive a prison sentence and, instead, he wanted to withdraw the plea.[2] It is simply unreasonable to think a defendant in this situation who wants to maintain a guilty plea would fail to inform the court of this when asked if he wants to make a record.

Because Jeffries consented to the district court's vacation of his guilty plea, the principle of continuing jeopardy should apply. Jeopardy never terminated in Jeffries' felony domestic-assault case, and there was not a second prosecution of the same offense. Instead, under the concept of continuing jeopardy, there was the continuation of the same criminal proceeding. Accordingly, Jeffries was not subject to a second prosecution for the same offense following conviction, in violation of the Double Jeopardy Clause.

DIETZEN, Justice (dissenting).

I join in the dissent of Chief Justice Gildea.

ANDERSON, G. BARRY, Justice (dissenting).

I agree that a defendant is convicted when a district court unconditionally accepts the defendant's guilty plea on the record, Minn.Stat. § 609.02, subd. 5 (2010), and that jeopardy usually attaches when a defendant has been convicted of a charged crime, see Brown v. Ohio, 432 U.S. 161, 168, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). But I respectfully dissent because the record does not support the court's conclusion that the district court unconditionally accepted Jeffries' guilty plea at the plea hearing.

When a defendant enters a plea of guilty pursuant to a plea agreement between the parties, "the trial court judge shall reject or accept the plea of guilty on the terms of the plea agreement. The court may postpone its acceptance or rejection [of the guilty plea] until it has received the results of a pre-sentence investigation." Minn. R.Crim. P. 15.04, subd. 3(1) (2009) (amended effective Jan. 1, 2010). In other words, Rule 15.04 allows a district court to either (1) accept a defendant's guilty plea, (2) reject a defendant's guilty plea, or (3) postpone acceptance or rejection of the plea

---

**2.** The district court did not expressly ask Jeffries how he wanted to proceed after it had indicated it was rejecting the plea agreement. Instead, the district court told Jeffries that it was vacating Jeffries' guilty plea. Jeffries, however, was told in chambers prior to the hearing that the district court had decided to reject the plea agreement. In addition, during the sentencing hearing, the district court asked Jeffries if he wanted to respond to what the district court had done, and he said nothing. Thus, Jeffries was aware of what the court was going to do prior to the sentencing hearing, and he still failed to indicate that he wanted to maintain his guilty plea.

until the defendant undergoes a presentence investigation. *Id.*

We explored this rule in *State v. Thompson*, 754 N.W.2d 352, 356 (Minn.2008). In that case, we were asked to decide whether a defendant who pleaded guilty to criminal sexual conduct was convicted at the plea hearing or at sentencing. *Id.* at 355–56. At Thompson's plea hearing, the district court stated that it " 'would * * * adjudicate[ ]' Thompson guilty of the charge, but reserved its decision regarding the appropriateness of the plea agreement pending completion of a pre-sentence investigation." *Id.* at 353–54. We concluded that although it was "undisputed that Thompson *entered* a guilty plea" at the plea hearing, Thompson was not convicted at the plea hearing because "the court did not *accept* the guilty plea on the terms of the plea agreement." *Id.* at 355–56 (emphasis added). We relied upon Minn. R.Crim. P. 15.04, subd. 3(1), when reaching that conclusion, noting that "a district court must either accept or reject the plea of guilty *on the terms of the plea agreement.*" *Thompson,* 754 N.W.2d at 356 (emphasis added). The acceptance of a defendant's guilty plea is *always* conditioned upon the district court's acceptance of the plea agreement as a whole, which includes both the plea and the agreed-upon sentence. In *Thompson,* the district court did not accept both the guilty plea and sentence at the plea hearing because the court expressly stated that it wished to reserve judgment on the propriety of the sentence pending a presentence investigation. 754 N.W.2d at 356. For that reason, we held that Thompson was not convicted

until the sentencing hearing, "when the district court accepted *both* Thompson's guilty plea and the terms of the plea agreement." *Id.*

Our analysis in *Thompson* is analogous to this case. Pursuant to a plea agreement with the State, Jeffries entered a plea of guilty at a plea hearing. After establishing the factual basis for the guilty plea, the district court stated:

> Well, Erik Lerone Jeffries, *based upon the facts on the record,* I'll accept your plea of guilty and find you guilty of the fifth degree domestic assault on January 22nd, 2008, in the City of Minneapolis. So you are convicted of that.
>
> I'm going to go ahead with the joint agreement of the parties and release you today on certain conditions, and then we'll have you back for sentencing in about six weeks or so out from today's date.

(Emphasis added.) The majority argues that these statements by the district court and the ensuing conversation with counsel show that "there was no indication by the parties or the court that the court intended to postpone its acceptance of the guilty plea." But this conclusion ignores several factors showing that neither the parties nor the court considered the plea agreement finalized.

Despite the district court's verbal acquiescence to "the joint agreement of the parties," [1] the court also made statements indicating that it had not yet determined the propriety of the terms of the plea agreement. First, the court's initial indicia of amenability to the plea agreement

---

1. It is unclear from the record whether the district court's reference to the "joint agreement of the parties" referred to the plea agreement or an agreement concerning Jeffries' release. If the district court was referring to a release agreement, it was an agreement reached off the record because the only

other discussions of Jeffries' release occur after this statement by the court. Nevertheless, a reference to a release agreement would only strengthen the argument that the district court did not unconditionally accept the parties' plea agreement.

was expressly "based upon the facts on the record," indicating that the court required more information before assessing the adequacy of the terms of the plea agreement. Second, the court ordered Jeffries to undergo a presentence investigation. Although the act of ordering a presentence investigation may hold little probative value in a discussion of whether the court unconditionally accepted Jeffries' guilty plea,[2] the court's discussion with counsel about the importance of the investigation reveals the court's intent to postpone unconditional acceptance of the plea. When discussing the presentence investigation with the parties, the district court emphasized to the defense that the court considered it "key" for Jeffries to attend any appointments related to the preparation of the presentence investigation report.

A presentence investigation report in a case involving domestic abuse informs the district court of "the circumstances of the offense, impact on the victim, the defendant's prior record, characteristics and history of alcohol and chemical use problems, and amenability to domestic abuse programs." Minn.Stat. § 609.2244, subd. 2(a). The report must also recommend "appropriate remedial action" and "consequences for failure to abide by conditions set up by

the court." *Id.*, subd. 2(b). Given the scope of the presentence investigation, it is clear that the content of the report has direct bearing on the appropriateness of a defendant's sentence. Furthermore, the court's statements at Jeffries' plea hearing prove the court valued and desired the information contained in a presentence investigation before the court decided whether the terms of Jeffries' plea agreement were proper. In fact, at the sentencing hearing in this case, the district court relied on the information in Jeffries' presentence investigation report and informed Jeffries: "To be candid with you, your [criminal] history looked a lot worse than what I thought it was when I indicated that the plea agreement probably would be acceptable."

As the majority concedes, "the words 'convicted' [and] 'I accept your plea' are [not] magic words that will always result in a conviction for double jeopardy purposes." Although the district court used those words at Jeffries' plea hearing, other statements and actions by the district court are a much better indicator of the court's true intent. Taking account of all statements made by the district court in relation to Jeffries' plea agreement, it is clear that the district court did not unconditionally accept Jeffries' plea of guilty at

2. Minnesota Statutes § 609.2244 (2010) requires a presentence domestic abuse investigation when a defendant is convicted of certain enumerated offenses, including an act of domestic violence. But because this statute makes a presentence investigation mandatory only if the defendant has been *convicted* of a crime, section 609.2244 is of little probative value in this case. As previously noted, a defendant who pleads guilty to a crime is convicted when the district court *accepts* a defendant's guilty plea on the record. Minn. Stat. § 609.02, subd. 5. To conclude that the presentence investigation ordered in this case was mandatory requires an assumption that the district court accepted Jeffries' guilty plea on the record—thereby assuming away the question at issue in this case. Similarly, to

rely solely on the act of ordering the presentence investigation as evidence of the court's intent to postpone acceptance of the guilty plea requires an assumption that Jeffries was not convicted at the plea hearing. Therefore, Minn.Stat. § 609.2244 is inapplicable to the analysis in this case. Rather, as in *Thompson*, our inquiry should focus on the district court's expression of intent to rely upon the information provided in a presentence investigation. *See Thompson*, 754 N.W.2d at 356 (discussing the court's ordering of a presentence investigation for a defendant pleading guilty to criminal sexual conduct), *and* Minn. Stat. § 609.3457 (2010) (requiring courts to order presentence investigations for individuals convicted of sex offenses).

the plea hearing because, at that time, the court believed it did not have enough information to determine the propriety of the terms of the plea agreement. The court could not, therefore, accept Jeffries' guilty plea on the terms of the plea agreement. In other words, the district court's statements and actions in this case implied what was expressly stated in *Thompson*—an intent to postpone the court's unconditional acceptance of Jeffries' guilty plea until the court could ascertain the appropriateness of the plea agreement.[3]

Based on the record in this case, the district court never "accept[ed] the plea of guilty on the terms of the plea agreement." Minn. R.Crim. P. 15.04, subd. 3(1). Because a defendant is not convicted until the court *both* accepts and records a plea of guilty, Minn.Stat. § 609.02, subd. 5, the question of whether the court recorded Jeffries' plea is immaterial. Jeffries was not convicted of felony domestic assault at the plea hearing. There was no point in time during the plea hearing when jeopardy could have attached because the court neither accepted Jeffries' guilty plea nor entered conviction.[4] Therefore, the district court's unconditional acceptance of the second plea agreement did not constitute a second conviction in violation of the Double Jeopardy Clause. I would therefore affirm Jeffries' conviction pursuant to the second plea agreement.

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice G. Barry Anderson.

3. The majority observes, "A decision to postpone *acceptance* of the guilty plea *does not* prevent the district court from making a record on the issue of whether the defendant has *entered* a valid guilty plea." Although I agree with this distinction, I would note that whether a defendant has *"entered"* a valid guilty plea" has no bearing on whether the defendant was convicted for the purposes of a double jeopardy analysis. *See* Minn.Stat. § 609.02, subd. 5 (stating that a defendant is

DIETZEN, Justice (dissenting).

I join in the dissent of Justice G. Barry Anderson.

not convicted until the court both accepts and records the defendant's guilty plea).

4. Because the district court did not unconditionally accept Jeffries' guilty plea at the plea hearing, I agree with the majority's statement that "we do not need to decide whether jeopardy constitutionally attaches upon mere acceptance of a plea."